Gittings, et al., *vs.* Moale.

Land Office by which it .was overruled with costs to the
appellees.

*Order reversed and caveat sustained.*

(Decided Feb'y 24th, 1864.)

JOHN S. GITTINGS, GEORGE H. WILLIAMS AND WILLIAM DAW-
SON, JUN'R, *vs.* RANDLE H. MOALE.

LAND OFFICE–APPEALS FROM COMMISSIONER OF.—Under the Act of 1853, ch.
415, granting appeals from the action of the Commissioner of the Land
Office, a party having no interest in the subject matter of the appeal,—a
mere stranger,—cannot be *"aggrieved"* by the action of the commissioner,
and therefore cannot maintain an appeal.

A CAVEATEE UNDER A SPECIAL WARRANT, so long as the *caveat* remains un-
disposed of, will have an interest in the land sought to be affected by his
special warrant, that will enable him to file a *caveat* against the granting
of a patent to his caveator for the same land.

WARRANT OF RE-SURVEY: VACANCY.—A party must be seized in fee of land
to entitle him to a warrant of re-survey; and under such warrant a patent
will not be granted for lands, as vacancy, which are not contiguous.

ADVERSE POSSESSION.—Where land claimed by adverse possession is proved
to have been an open common for fifty years over which all persons passed
and repassed at will, and tenants of adjoining land of the claimant were
in the habit of passing with carts, &c., in all directions across the com-
mons to and from the city of Baltimore, and other points; HELD:

That such user of outlying unenclosed lands, does not constitute acts of
ownership such as the law requires to form a basis of title by possession.

APPEAL from a decision of the Commissioner of the Land
Office.

On the 26th of October 1854, the appellee obtained a
special warrant to resurvey a tract of land called "Upton
Court," contiguous to which, he represented that, he had
discovered some vacant land which he was desirous to add
thereto. On the 24th of October 1855, Mr. Chiffele, then

the city surveyor for Baltimore, returned his certificate of survey under this warrant to the Land Office, stating therein that he had added two acres and thirty perches more or less, which he had called "Moale's Security," and that there was no vacant land contiguous to that resurveyed by him, other than that called by him "Moale's Security," which was stated in his return to be the same parcel of land before surveyed and returned by him to the Land Office by virtue of a special warrant issued therefrom to John S. Gittings, on the fourteenth day of October 1852, and called therein "Randle's Disappointment." On the 1st of November 1855, the appellants filed a *caveat* against the issuing of a patent on this certificate, assigning three grounds of objection. On the 3rd of November 1855, they filed another *caveat*, merely assigning the 1st and 2nd grounds of their former *caveat*. And on the 13th February 1856, they filed a third *caveat*, reassigning the former objections, and adding two additional objections. This latter *caveat* was the only one that was verified by affidavit as required by the rules of the Land Office. These objections are not stated here because they are covered by the reasons of appeal, which will be hereafter stated at length. This cause depending on the same proofs and illustrations as the *caveats* filed by the appellants against "Sebastapol" and "Randle's Disappointment," it was agreed that they should all be tried at the same time, using all the proofs and exhibits filed in the said cases, and no order for taking separate testimony was issued, but all the proofs, exhibits, &c., were considered by consent as applicable to, and to be used in each case as if filed separately. Numerous depositions, documents and plats were filed, and the cause having been finally heard by the Commissioner of the Land Office was disposed of by the commissioner by an order dated 19th December 1857, overruling and dismissing the *caveats*, and directing that a patent should be issued to the appellee on application.

From this order an appeal was prayed by the appellants, on the 15th May 1858, and they filed at the time of appeal the following reasons:

"1. Because a part of the land included in said 'Moale's Security' was, by the proof in the cause, shewn to have been covered by a special warrant issued to the caveators; and which had been returned and compounded.

"2. Because it was shewn that the said part of said 'Moale's Security,' was covered by a special warrant issued to W. Dawson, Junior, for the benefit of himself and the other caveators since the issuing of the warrant of resurvey to said Moale, and prior to any surveys thereunder.

"3. Because the proof in the cause shews that said Moale was not the owner of any land contiguous or adjacent to that included in said return as vacancy; and that between the land covered by the above specified warrant as vacancy and that now in possession of said Moale, there was land shewn by the proof in the cause to be the property of and held and possessed by persons other than said Moale, and which prevented all contiguity between said vacancy and Moale's possessions.

"4. Because the proof established that the warrant of resurvey called 'Moale's Security,' was not executed by the surveyor, nor by any officer by him deputized in the mode prescribed by law; and because it was, in fact, executed by one who did not qualify himself in accordance with law, and the Acts of Assembly; and because the proof also established that said survey was not in fact executed according to the usages and customs of the Land Office, nor in accordance with the requirements of the Acts of Assembly for such cases made and provided; and further, that in fact no survey was made at all.

"5. Because after *caveat* the burthen of proof was upon said Moale to shew not only contiguous lands by him owned, but also that he was seized in fee thereof; and there was not only no such proof, but the evidence in the cause established the reverse, and that there was neither owner-

ship or possession on the part of said Moale, in any land contiguous to said vacancy."

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*George H. Williams,* for the appellants:

As to the first ground of appeal, the surveyor's return to Moale's certificate of resurvey, states the fact, and there is no attempt to contradict it.

As to the second, the surveyor's return to second additional instruction as to "Sebastopol," establishes the fact.

As to the third, an intervening space is proved by the witnesses—Voyce, Lock, and Sprigg—and that the heirs of Jacob Giles yet claim to hold this intervening space, and have been in possession of "Upton Court" since the last war, and having proved by all the witnesses in the cause, that for the space of fifty-five years to the time of taking the depositions, that except Mountgarret's house put up within the last seven or eight years, the whole land as laid down on the plat was an open common—Mountgarrett's house and lot not standing on the land in controversy in this case. It was then shown by record evidence, that the paper title of the Moales clearly left the intervening vacancy, which destroys all pretence of *contiguity.* The paper title of R. H. Moale, as deduced, in the record, is thus:

"'Upton Court' resurveyed for J. Giles, 29th March 1723. John Giles' devise to Jacob Giles—'Upton Court;' will proved 6th Nov. 1725. Jacob Giles conveys to John Moale only a part of 'Upton Court'—200 *acres;* deed 1st March 1732. John Moale devises to Richard Moale; will proved 9th Sept. 1740. R. Moale devises to J. Moale the 2nd, as residue; will proved 28th Feb. 1786. J. Moale the 2nd, calling himself heir by entail to Richard, devises to R. H. Moale, the appellee, only 69¼ acres; will proved July 1798."

The paper title thus showing no contiguity, the proof showing the intervening space an open common for upwards of fifty-five years, and no possession; and the appellants producing Giles' heirs claiming title to the intervening space, and who are still in possession of and own part of "Upton Court."

The only proof given by appellee attempting to show possession, was the lease to Reese, which did not comprehend any part of the intervening space nor the vacancy, but was on the land comprehended in Moale's paper title; and also a lease of lots, pretended to have been a part of the intervening space and vacancy, from Richard Moale to E. Mackie. These lots as located, were counter-located by appellants, and the appellee being thus put to his proof of location, gave no proof in regard thereto, and did not even attempt to prove that at any time there was ever any possession taken under said lease by said Mackie, or any person whatsoever claiming under him, or otherwise—that Moale had no contiguous lands, was therefore *demonstrated.*

As to the first and second reasons of appeal, that the surveyor's return without opposing proof, shows a special warrant issued both before and after Moale's, either of which sufficed to prevent his patent for an assumed vacancy, *vide Cunningham vs. Browning,* 1 *Bland,* 323, 326.

As to the third and fifth reasons of appeal:

1. That after *caveat,* unless Moale could shew that he was seized in fee of land described in the warrant of resurvey, the *caveat* must prevail. *Landholder's Assist.,* 427, 453, 459. *Hughlett's Case,* 475 *of 3d Bland's Repts. Twigg vs. Jacob,* 4 *Md. Ch. Rep.,* 541. *Hammond vs. Norris,* 2 *H. & J.,* 141. *Lee vs. Hoye,* 1 *Gill Rep.,* 202. Now Moale has not shewn in this case any title to the land described in the surveyor's return, though the burthen of proof was upon him. As to the leases, they are not evidence of title. *Brierly & Slaley vs. Holtz,* 5 *G. & J.,* 455. On the contrary, the *caveators,* though not bound so to do, have shewn title to "Upton Court" in the Giles family, and

produced them to shew, that they still claimed title under their patent to some twelve or fourteen acres specified in the surveyor's return of "Moale's Resurvey;" and also shewed by the original title of the Moales as located, that the said twelve or fourteen acres never were comprehended within the lines of the property conveyed to them, nor pretended to be comprehended therein. The surveyor specially set forth also in his return, that there was no vacancy; and that the pretended vacancy had been previously taken up by the *caveators.* Without any countervailing proof as to these twelve or fourteen acres, or attempt on the part of Moale to shew title, the commissioner, nevertheless, orders the patent, and overrules the *caveat,* giving him, also, the pretended vacancy.

2. That it is the undisputed law of the Land Office, that a patent will not be granted for lands taken up under warrants of resurvey, which are not contiguous. *Land. Asst.,* 412, 413, 447. *Wilson vs. Markle,* 4 *Md. Ch. Rep.,* 535. *Steyer vs. Hoye,* 12 *G. & J.,* 228. Now if the Moale title be truly located according to the courses and calls in the deed of J. Giles to J. Moale, and there being no proof of possession by them, of land outside sufficient to acquire title thereby, of course there is no contiguity, and the *caveat* as to the vacancy is perfectly irresistible—it is not pretended that any of the Moale family ever claimed paper title, except under that deed—*caveators* have located that deed, and the pretensions of the Moales thereunder, and a large intervening space demonstrated to exist, and the want of contiguity shewn, without any effort, on Moale's part, to prove title or contiguity.

As to the 4th reason of appeal:

The rules of the Land Office to the surveyor, *Landholder's Assist.,* 435 and 436, prohibit the return of any surveys unless he or his assistant have measured every line. How this assistant is to be appointed, *vide Landholder's Assist., p.* 439, *rule* 19*th.* Chain-carriers were to be sworn, *vide* Act 1782, ch. 38, sec 3. Now Bosley proves, that in

the survey on "Randle's Disappointment," he and Dawson were chain-carriers, were not sworn, and that he was not an assistant surveyor duly appointed; and Martinet proves, that the surveys for "Moale's Security" were made by him, and not the surveyor; that he never was appointed, bonded or sworn as an assistant or deputy; and that the survey was but of part, and that the whole was made up by adopting into it the surveys in "Randle's Disappointment," with all its illegalities and irregularities. Even a deputy surveyor, so strict are the rules of the Land Office, cannot make survey out of his own county. *Hammond vs. Ridgely,* 5 *H. & J.*, 263.

The motion to dismiss the appeal cannot be sustained, because the appellants *are aggrieved* by the decision below. The State stands as vendor, and adjudicates between the rival purchasers. The appellees have paid their caution money for "Randle's Disappointment." And besides the order of the Court below inflicts upon them a heavy bill of costs.

*William Schley,* for the appellee :

The Act of 1853, ch. 415, gives the right of appeal only to "parties aggrieved, by any judgment, final order or determination, in any case affecting the title to lands." Unless, therefore, the appellants are parties *aggrieved* by this particular decision, and unless the decision affects the title to lands, the appeal must fail, irrespective of any questions as to the propriety of the decision in other respects. For example: the direction that a patent shall issue, on application, to the appellee, for "Moale's Security," is no grievance to the *appellants,* unless they have a *right,* in or to the land injuriously affected, or which may be injuriously affected by such issue of a patent. And thus the questions, open on this appeal, are practically narrowed to enquiries as to the right of the appellants, under the alleged special warrants mentioned in the first and second reasons of appeal. The salutary provisions of our laws in

relation to patents, sufficiently protect the State, and also persons not parties to this controversy. *Salmon vs. Boon,* 8 *Md. Rep.,* 298. *Dakin vs. Pomeroy,* 9 *Gill,* 1. 8 *Md. Rep.,* 298.

The first reason of appeal is based on the supposed interference of the location of "Moale's Security," with the asserted prior right of the appellants, growing out of an alleged previous special warrant to them issued. Now the appellee insists, that there is nothing in the record to shew such asserted prior right, or such previous special warrant, or the issue of any warrant, special or common, to the appellants. The agreement of counsel does shew that there were *caveats* against the issue of patents for "Sebastapol," and for "Randle's Disappointment;" and that the *caveat* against "the application" for "Randle's Disappointment," was entered by the appellee. Nothing more can be fairly inferred from said agreement. In the certificate for "Moale's Security," the surveyor says: "It being the same parcel of land heretofore surveyed and returned by me to the Land Office, by virtue of a special warrant, issued therefor to *John S. Gittings,* on the 14th October 1852, and called therein "Randle's Disappointment." Now if it could be assumed that the warrant, described by the surveyor as *issued to John S. Gittings,* is the same warrant which the appellants describe as a warrant issued to *them,* still it follows, that said warrant was *functus officio,* and of no legal efficacy whatever, on the 26th October 1854, the date of the warrant to appellee. It is not to be presumed that the warrant was duly executed, returned and compounded on, within twelve months, or that it was duly renewed. The alleged right of the appellants ought to appear, affirmatively and conclusively, in the record. It ought to be clearly stated and clearly proved.

4. But even if the last point is not conclusive, and if it is to be assumed that the asserted right of the appellants to "Randle's Disappointment" is based on the survey, which the surveyor says he returned to the Land Office, still, it

is manifest, that such survey was a mere nullity. *Vide* testimony of the surveyor and of John H. Bosley.

5. The second reason of appeal is even less tenable than the first. The alleged second warrant is not in the record; nor is it stated or shewn what, if anything, was done under it. If the appellants have any rights under such alleged warrant, it is certain that such right does not appear in the record. And, in a case like this, the maxim very properly applies, "*de non apparentibus et non existentibus eadem est lex.*"

6. But, apart from objections, founded on the want of title in the appellants to prosecute this appeal, it will be insisted, that even if the appellants had obtained a prior special warrant, and had had it regularly executed and returned, and had paid the composition money thereon, still, *on the merits*, they had no right to a patent for the land, claimed as being vacant; because it was embraced within the lines of the patent for Upton Court. An examination of the certificate on which that patent was granted, in connection with the plat therewith returned, will make this manifest. The State will not issue a patent for land, already granted. *Ridgely vs. Johnson*, 1 *Bland*, 316. *Cunningham vs. Browning*, 1 *Bland*, 319. *Smith vs. Baker*, 4 *Md. Ch. Dec.*, 29.

7. But, whether included in "Upton Court" or not, the long, continuous, uninterrupted possession of the appellee, and of those under whom he claims, is of the same efficacy as if there had been a previous grant. Act of 1818, ch. 90. 1849, ch. 424. 1852, ch. 177. *Chapman vs. Hoskins*, 2 *Md. Ch. Dec.*, 493. *Dorothy vs. Hillert*, 9 *Md. Rep.*, 570. *Thistle vs. Frostburg Coal Co.*, 10 *Md. Rep.*, 139. *Townsend vs. Stangrom*, 6 *Ves.*, 328. Acts of user and ownership are sufficient to prove possession. The Moale family have paid taxes on the land, it has always been called the Moale property. They have sold loam from it; and their lessees have used it whenever and wherever they chose. *Ewing vs. Burnett*, 11 *Pet.*, 41. *Hoye vs. Swan*, 5 *Md. Rep.*, 237.

8. Even if the land, or any part of it, is vacant and grantable, the appellee, under his warrant, and the proceeding thereunder, became entitled to a patent therefore:

1. The *third* reason of appeal is unfounded in fact. The contiguous land was in the actual possession of the appellee, and under circumstances which made him the owner.

2. The *fourth* reason of appeal is not good. The deputy (Martinett) was sworn *as such.* Act of 1811, ch. 100.

3. The *fifth* reason of appeal is directly against the decision in *Dorothy vs. Hillert,* 9 *Md. Rep.,* 570.

But the appellants, as caveators against the issuing of a patent for "Moale's Security," were not *recti in curia,* if ever, until the 13th February 1856, when they filed their third *caveat,* with an affidavit. Act of 1707, ch. 114, sec. 9. *Landholder's Assistant,* 467, 487, 315. Now, at that time, both of their special warrants had run out. They were pragmatical objectors, without any interest in the controversy. In analogy to the practice in chancery, in cases of exceptions by persons claiming to be creditors, but whose claims are unreal, the *caveat* was properly overruled. *Post vs. Mackall,* 3 *Bland,* 486.

BARTOL, J., delivered the opinion of this Court:

This is an appeal from a decision of the Commissioner of the Land Office, overruling a *caveat* of the appellants, and ordering that a patent for the land in controversy be issued to the appellee. Before considering the case upon its merits, it is necessary to dispose of a preliminary question raised by the motion to dismiss the appeal. The Act of 1853, ch. 415, gives the right of appeal in such cases, to "any parties aggrieved by the judgment" of the Commissioner. In this case it is alleged the appellants are not aggrieved by the judgment, because "they have no interest in the controversy," and are therefore mere "pragmatical objectors." On this ground the motion to dismiss is based; and if the fact were as alleged, of course the motion would prevail, because a party having no interest in the subject-

matter, a mere stranger could not be aggrieved, and there-fore would not be heard as *caveator* or appellant.

We think, however, this record discloses that the appel-lants have a substantial interest in the subject of the con-troversy, which would be injuriously affected by the Com-missioner's judgment. This will appear by a recital of the facts as shown by the record. On the 26th of October 1854, the appellee obtained a special warrant to resurvey a tract called "Upton Court," with power to attach *contiguous vacancy*. On the 24th of October 1855, the surveyor re-turned to the Land Office his certificate of survey under this warrant, stating therein that he had added two acres and thirty perches, more or less, and which he had called "'Moale's Security.' *It being the same parcel of land here-tofore* surveyed and returned by me, to the Land Office, by virtue of a special warrant issued therefrom, to John S. Gittings, on the 14th day of October 1852, and called therein 'Randle's Disappointment.'"

It appears also from the record, that a *caveat* had been filed in the Land Office, by the appellee, against the issue of a patent for "Randle's Disappointment," which was pending, and by the agreement of counsel, was to be heard and disposed of upon the same proofs as were taken in the present case.

The special warrant under which Gittings, one of the ap-pellants, claims, although not exhibited in the record, plainly appears to cover the land in controversy, and to have been prior in date to that of the appellee, and thus discloses his interest, and his right to be heard as *caveator*.

Three several *caveats* were filed by the appellants, the first on the 1st November 1855, the second on the 3rd No-vember, 1855, and the third on the 13th February, 1856. The last being the only one verified by affidavit, as required by the rules of the Land Office, the appellee contends, is the only one entitled to be considered, and at that time the special warrants had expired, and all interest which the

appellants might have claimed under them had ceased. It is sufficient to say in answer to this suggestion, that it appears by the very agreement referred to, that a *caveat* had been filed, and was undisposed of, and therefore under the rules of the Land Office, the special warrant of the 14th of October 1852, it must be assumed, had not expired. We think the motion to dismiss this appeal should be overruled.

Under the Act of Assembly, the appellants filed their "reasons for appeal." These are five in number, but it will be necessary for us to notice only the third, which is as follows:

"Because the proof in the cause shows that said Moale was not the owner of any land contiguous or adjacent to that included in said return as vacancy; and that between the land covered by the above specified warrant as vacancy, and that now in the possession of said Moale, there was land shown by the proof in the cause to be the property of, and held and possessed by, persons other than said Moale, and which prevented all contiguity between said vacancy and Moale's possessions."

The legal principles asserted in this objection are well established, that is to say, a party must be seized in fee of land to entitle him to a warrant of resurvey; and under such warrant, a patent will not be granted for lands as vacancy which are not contiguous. For these elementary rules of the Land Office, it is sufficient to refer to the authorities cited by the appellants in the first and second points of their brief.

The decision of the case therefore turns upon an examination of the facts, as shown by the locations and other proofs in the record. These we have carefully examined, and are all of opinion the appellee has failed to establish the required contiguity. His title is presented by the record in two aspects: First, as derived under the will of his father, John Moale, proved the 11th of July 1798; and secondly, as based upon long possession.

1st. As to the paper title. This is deduced as follows: The tract called "Upton Court," containing 620 acres, was resurveyed for John Giles the 29th of March 1723. John Giles devised a part of the same tract to Jacob Giles by will, the 6th November 1725. By deed dated the 1st March 1732, Jacob Giles conveyed to John Moale a part of "Upton Court," containing about 200 acres. John Moale devised to Richard Moale, who devised to John Moale, (2nd,) father of the appellee, who devised to the appellee 69¼ acres thereof.

Upon the true location of the land described in the deed from Jacob Giles to John Moale, the title of the appellee depends. That location as shown by the plot made by Gilbert H. Bryson, surveyor, and returned to the Land Office in this case, fixes the northernmost limit of the land described in the deed, at the line extending from the north-west branch of the Patapsco to X, thence to D on the Middle branch of the Patapsco. If this be the correct location, the result would be that between the line indicated, and the parcel taken up under the warrant as vacancy, there intervenes a space of twelve or fourteen acres, thus destroying the contiguity. This intervening land according to the testimony of several witnesses, is claimed by the heirs of Giles. *

The location just referred to was made under the caveator's instructions, and its correctness depends upon the true location of the line forming the "northernmost bounds of "Upton Court," which is the second call in the deed.

In this case it is not necessary for us to decide whether the line marked upon the plat as the northernmost bounds of "Upton Court," is truly located; or whether the true location of "Upton Court" is that claimed by the appellee. In the latter case the northernmost bounds would be indicated by the line extending from the north-west branch at the letter P to M. One thing is quite clear, by the description in the deed, after reaching the northernmost bounds of

---

* For Plot here referred to see Appendix A, at the end of the vol.

"Upton Court," the call is for a line running "*south-west two hundred and twenty-five perches* (or *thereabouts*) *to the middle branch of the Patapsco*." If we assume the appellees' location to be correct, this line would run from P to M, and thence continuing the same course to the Middle branch; which would still leave an intervening space of several acres claimed by Giles' heirs, and equally destroy the contiguity.

2nd. Appellee's title by possession: In the opinion of this Court, upon an examination of all the testimony, the appellee has failed to prove such acts of user and ownership as to establish his title by possession. In the case of *Thistle & others vs. The Frostburg Coal Co.*, 10 *Md. Rep.*, 130, it was decided that such possession "must be proved with clearness and precision, must cover the full period of twenty years, and must be adverse, exclusive, and unbroken." That "the acts of *user and ownership* relied on, must be such as comport with the title or claim of one asserting ownership against all the world, and not such as may be done with impunity by any and all persons in common with him who claims to be the real owner."

Tried by this test, the evidence relied on by the appellee in this case to establish title by possession is altogether inconclusive and insufficient.

With the exception of Mountgarrett's lot, which had been occupied but seven or eight years, the land, outside of the line we have indicated as the limit of the appellee's record title, was for fifty years an open common, over which all persons passed and repassed at will.

There is no evidence that any possession was ever taken or held of lots Nos. 471 and 472, under the lease from Moale to Mackie. The brickyard occupied by the Messrs. Reese as tenants of the appellee, was within his lines. They prove that they were in the habit in the prosecution of their business, of passing with carts, &c., in all directions across the commons, to and from the city, and other points; but such an user of outlying unenclosed land does not constitute acts of

ownership such as the law requires, to form a basis of title by possession.

Whether we confine ourselves to the paper title of the appellee as disclosed in the record, or examine his alleged title by possession, we are forced to the conclusion that he has failed to show such a seizen and ownership of the contiguous lands, as to entitle him to claim as vacancy the parcel of land in dispute. Considering the third reason for the appeal has been supported, it is not necessary to refer to the others.

The decision of the Commissioner of the Land Office overruling the *caveat* will be reversed.

*Order reversed.*

(Decided Feby. 25th, 1864.)