# BISHOP ET UX. *v.* STACKUS
[No. 104, October Term, 1954.]

*Decided March 22, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, and HENDERSON, JJ.

*Charles W. Held, Jr.,* for the appellants.

*Austin W. Brizendine,* with whom was *John Grason Turnbull* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

The appellants, Byron G. Bishop and Sarah Bishop, on June 4, 1951, filed an amended declaration claiming title to land by adverse possession, in an action of *trespass*

*quare clausum fregit* against the defendant, appellee, Walter Stackus. At the end of the testimony the trial judge directed a verdict for the defendant. From the judgment entered on that verdict, the appellants appeal.

The facts are substantially as follows. In Septemeber, 1930, the plaintiffs, appellants, purchased Lot No. 11 on Plat No. 1, Lutherville, in Lutherville, Baltimore County. They promptly contracted to have a house and garage built. The garage was built, not on Lot No. 11, but on Lot No. 10, the adjoining lot, before November 13, 1930, when appellants moved into the house which had been built on Lot No. 11. About the time the garage was built appellants constructed a driveway to the garage, part of the driveway being on Lot No. 10. Appellants built a dog house and kept a dog back of the garage, and also planted currant bushes and cherry trees in 1930, and planted a grape vine in 1931, all on Lot No. 10. Mr. Bishop had been paying taxes on the garage since 1930 but not on the land. The garage can be seen by anyone driving up College Avenue, on which the house on Lot No. 11 faces, and from Spring Avenue, bordering Lot No. 10. The garage has been used by the appellants since 1930. The appellants have used all the land surrounding and back of the garage since 1930 or 1931. The part of Lot No. 10 occupied by the appellants since 1930 or 1931 consists of a triangle, which contains part of the driveway to the garage, the garage, outdoor fireplace, grape vines, bushes, trees, and a hedge, all put there by the appellants.

In June, July or August, 1950, the appellee, Walter Stackus, purchased Lot. No. 10 and soon thereafter began to erect his home there. Mr. Stackus testified that late in 1950 he knew within a few feet where the true boundary line between his land and that of the Bishops' ran. He said while he was measuring his property, Mrs. Bishop came out and said she did not know exactly where the boundary line was, but maybe the garage was a few feet over the line. She did not know how far. He further testified that she said at that time she knew

the garage was several feet over the line, that they wanted a two car garage with possibly a breezeway. They hoped later to put up a two car garage and at that time maybe they could talk over the terms and maybe destroy or remove the old garage which was on the property which the appellee was claiming. He said at no time did either Mr. or Mrs. Bishop make any claim to him that they owned the land in dispute. In November, 1953, Mr. Stackus had his lot surveyed, which showed that the triangle now in dispute was part of Lot No. 10, purchased by him. After the survey was made he said he spoke to Mrs. Bishop. She admitted that the builder had put the garage on the wrong property and said she called him to see what he would do about it, because twenty years before, when she said she thought it was on the wrong property, the builder said: "Well, if we ever have to, we will move it." He talked to Mrs. Bishop the following day and she said she had talked to her husband about it and he felt that because of the lapse of time, he would "have to have" $200.00 to move it. On cross-examination he admitted that the garage had been in its present location since he bought his property. He said that within twenty-four hours after he had his property surveyed he put up the fence across the driveway in front of the garage.

Mrs. Stackus testified that Mrs. Bishop told her many times that she had known since the garage was erected that it was on Lot No. 10 and had insisted that Mr. Shock, the builder, would move it "when the time came."

Mr. Bishop testified that before November 13, 1930, he had the garage erected about twenty-five feet on Lot No. 10. He knew at that time that it was on Lot No. 10. On November 20, 1953, after the survey was made by the appellee, the fence was erected by the appellee directly across the driveway to the garage. He claimed to have used all the land within the disputed triangle continuously since 1930 or 1931. His occupation of the land could be clearly seen. No one else had used or occupied it. After Mr. Stackus bought Lot No.

he asked him if he could cut down the hedge because it harbored rats. He agreed that appellee could cut it down. He further said the question of the property line did not come up until two years after Mr. Stackus purchased the property and until after the survey was made. Mr. Bishop was asked on cross-examination if he claimed the land on which the cherry tree was located. This cherry tree is within a few feet of the line of the disputed land. He replied: "Well, if it will create a hardship for Mr. Stackus for me to claim that, why he can have part and I am willing to divide with him." He claimed all the property except the part occupied by the cherry tree.

Mrs. Bishop testified that when Mr. Stackus in September, 1953, found that the garage was on his property, he came to see her. She told him she had known that. She had talked to the man who built the garage, Mr. Shock, and told him she thought the garage was not on the line. Mr. Shock replied: "Well, if you think this garage is off the line, you had better get it moved because I might die." She replied to the builder: "Well, I don't think I will bother." This conversation was in 1930. The garage had remained there and has been used by the appellants since it was built in 1930. When asked what, in addition to the grape vine, the garage and the driveway, they had placed on the triangular strip here in question, she replied: "Well, I started out planting a shade tree on that corner there, and then planted shrubbery all the way along that side.' And that hedge that was spoken of before, that was a portion of the hedge. And then we used,—and in the back of the garage we kept dogs. And we had the dog house and we had the fire place. And the raspberry bushes and the tree, and asparagus. And from time to time, a little parsley bed. And sometimes we would dig it up and maybe some years we would have tomatoes and different things back in that section of the garage." All of the triangle had been used by appellants continuously since

1930 or 1931. She said she had no intention of moving the garage.

Erma Roller, a witness called by plaintiffs, appellants, testified that she had lived opposite Lot No. 11 since June 13, 1930, and that the Bishops moved into the house built there on November 1, 1930, and the garage was in its present location at that time.

Of course, possession to be adverse must be actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the statutory period of twenty years. *Peper v. Traeger,* 152 Md. 174, 181, 136 A. 537, and cases there cited. The appellee here admits that the possession of the appellants to the triangle here in question was actual, open and continuous, but denies that it was notorious, hostile and under claim of title or ownership. There seems no doubt that possession was exclusive and notorious. It is said in *Frank, Title To Real And Leasehold Estates,* page 162: "In general it may be said that those acts which go to make possession *actual,* likewise suffice to make it *visible* and *notorious.*"

Appellee's real claim here is that appellants' possession was not hostile or under claim of ownership. He relies on the case of *Gee v. Ghee,* 194 Md. 328, 70 A. 2d 810. The facts in that case are totally dissimilar from those here. He relies on the above quoted statement that Mr. Bishop was willing for the appellee to have the land on which the cherry tree was located, and on the fact that he was allowed to cut down the hedge. By these statements it is evident that the appellants did not relinquish their claim of ownership, but were willing to let appellee keep that part of the disputed property and for him to cut down the hedge. There is no doubt that the garage was on the property for a period of over twenty years. The appellants testified definitely that they knew the garage was on appellee's property and that the property occupied by them during this period was not part of their land. There is no denial of this, other than the concession that the appellants were willing for the ap-

pellee to have the land where the cherry tree stood and were willing for appellee to cut down the hedge. This was merely a concession on the part of the appellants to the appellee. If they had not claimed the property, it would not have been necessary for them to have given the concessions. As pointed out in the case of *Tamburo v. Miller*, 203 Md. 329, 100 A. 2d 818, under the earlier cases it was held in this State that where a land owner extends his fence through inadvertance, ignorance or mistake as to the correct location of the true boundary line, with no intention of claiming the area thus enclosed, adverse possession could not be established because the holding of the extended area is neither adverse nor hostile. The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the statute of limitations, the adverse possessor obtains title where there is evidence of unequivocal acts of ownership. It is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertance, ignorance or mistake, is entirely immaterial. *Hub Bel Air, Inc. v. Hirsch*, 203 Md. 637, 102 A. 2d 550. Here, the appellants testified they knew they were occupying appellee's land and stated that they had no intention of vacating it. There was evidence from which the jury could have found that their occupation was hostile and that appellants claimed ownership to all the land described in the declaration. *Bonsal v. B. & O. R. R. Co.*, 138 Md. 309, 113 A. 751. The actions of the appellants in building the garage and driveway, and in planting trees and shrubbery on appellee's land are evidence from which the jury could find that they intended to claim ownership and that their occupation was hostile. We are of opinion that the motion for a directed verdict in favor of the appellee should not have been granted. Therefore, the judgment must be reversed and the case remanded for a new trial.

*Judgment reversed, with costs, and case remanded for a new trial.*