STERLING *v.* STERLING

[No. 36, October Term, 1956.]

494

*Decided January 7, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

Submitted on brief by *Lewis C. Merryman* and *Ashman, Link & Merryman* for the appellant.

*Lionel Bennett* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a controversy between Wellington G. Sterling (also

known as Guy Sterling) and Jacob K. Sterling (also known as Jake Sterling) regarding the title to an island situated in and surrounded by the waters of Ape's Hole Creek in Somerset County, Maryland. The appellant, Guy Sterling, claims title through a patent issued by the State of Maryland on April 29, 1955, and the appellee, Jake Sterling, claims title by adverse possession. Suit was instituted by the appellant to enjoin the appellee from trespassing on the island and to force the appellee to remove the buildings and floats which he had constructed there. The case was tried in the Circuit Court for Somerset County and resulted in a decree dismissing the bill of complaint. This appeal is from that decree.

The island in controversy is the "North Island" of the two islands known as "Guy's Islands" and is located in the navigable waters of Ape's Hole Creek. It is not a naturally formed one but came into being through the depositing of oyster shells for many years below a crabbing shanty which the appellee had constructed on pilings in a shallow place in the creek.

The primary question in this case is whether or not the appellee has gained title to the *locus in quo* by adverse possession so as to prevail over the patentee of the State. The facts tending to show adverse possession concern two different subject matters: (1) land under navigable waters and (2) land above water (here an island). Because of the distinction in legal principles affecting the different subjects we shall discuss them separately.

1. *Land Under Navigable Waters.* Code (1951), Article 54, Section 48 (as amended by Chapter 47, Acts of 1955), provides:

> "No patent hereafter issued out of the land office shall impair or affect the rights of riparian proprietors, as explained and declared in Sections 45 and 46: and no patent shall hereafter issue for land covered by navigable waters."

Essentially this same statute has been in effect since 1862. (The 1955 amendment merely corrected the reference to §§ 45 and 46, instead of §§ 46 and 47 erroneously referred to in

the 1951 Code.) The question of title by adverse possession to lands under navigable waters in the light of this statute has long been settled in Maryland. In the leading case of *Sollers v. Sollers,* 77 Md. 148, 26 A. 188, this Court said (at pages 151-152 of 77 Md.) : "Terrapin Cove, therefore, being a tributary of Patuxent River, and within the ebb and flow of the tide, must be regarded as a public river or arm of the sea, the soil of which under the charter granted to Lord Baltimore, became vested in the State of Maryland; and so it remains, unless it be included in some grant by the State, made prior to the passage of the Act of 1862. The plaintiff in this case does not rely upon such a grant; his only claim is by adverse possession. But title by possession presumes a grant, and such a presumption cannot be entertained as against one incapable of granting. *Casey's Lessee vs. Inloes, et al.,* 1 Gill, 497. No title, therefore, could be acquired by possession as against the State, in the face of the statute, which expressly provides, that no such grant shall be made, * * *." See also *Hodson v. Nelson,* 122 Md. 330, 89 A. 934, in which the continued ownership of the State of submerged land beneath navigable waters was recognized, where, as in the instant case, a crab house was built on poles driven into a creek bottom. It follows that the appellee cannot gain title by adverse possession as to the land under navigable waters. Thus, for the appellee to gain title by adverse possession he must have the required possession when the *locus in quo* is not under navigable waters.

2. *Land Above Water* (An Island).

Article 57, Section 10 of the Code (1951) provides:

"Whenever land shall be taken up under a common or special warrant, * * * any person * * * may give in evidence under the general issue his possession thereof; and if it shall appear in evidence that the person * * * or those under whom they claim have held the lands in possession for twenty years before the action brought, such possession shall be a bar to all right or claim derived from the State under any patent issued upon such warrant; * * *."

This action having been instituted on May 16, 1955, it becomes necessary to determine whether or not the appellee has had possession of the land above water for twenty years prior to the bringing of suit.

The exact date at which the island in controversy came into being is not clear from the record. There was testimony to show that an island had existed at some time in the early 1890's, but that in 1933 a hurricane had completely washed away every vestige of the island which had previously been above water. The present island has been built up since then. How much of it was washed away by another hurricane in the fall of 1954 is not clear. For purposes of this opinion we shall assume that at least a substantial part of the island remained. With this assumption in mind, a close examination of the testimony gives us a fairly accurate approximation of the time when the present island rose above water. The appellee, Jake Sterling, testified as follows:

> "By the Court:
>
> "Q. 11. On the land in question now?
>
> "A. There was no land there. It was under water. We had to drive poles to install the shanty. And you do likewise right now. In other words, any high water will wash it away. You have to put it on poles. In April or March, I will say, of 1935, I started to put the poles down. My brother helped me to put the poles down to put the shanty on. I had to put a wharf all the way around the shanty. During the year 1935, or the summer of 1935, I bought crabs there throughout the summer. Some of the crabbers are out here and will testify. When the Winter came on of 1935 the shanty was open for the use of anybody. And a lot of them used it to open oysters in, and they dumped the shells over, and from one year to another that is where the island came from.
>
> "* * * Oyster Seasons I have let anybody use it that wanted to in the Winter Season. Of course, nobody wanted to use it in the Summer time because it wasn't room in it. I guess fifty men or more used

it anytime through the Winter they wanted to open their oysters and the shells were poured overboard * * *.

"Q. 17. And the accumulation of shells is what made the island?

"A. Yes, sir."

The testimony of the witnesses produced by the appellee corroborates his testimony as to there being no island during the summer of 1935 and to the effect that the land rose above the water sometime thereafter. It is evident that in speaking of the "Winter of 1935", they were speaking of the winter which began at the end of 1935 and extended into the early months of 1936. Considering the testimony in a light most favorable to the appellee, we shall assume that the island came into being during the winter of 1935-36. The earliest possible date would have been November or December, 1935. With such a date assumed, we need go no farther. The island not having been in existence for twenty years prior to the filing of the suit in May, 1955, could not have been held in adverse possession for the requisite period of time. It thus becomes unnecessary to consider whether the possession was actual, open, notorious, exclusive, hostile, under claim of title or ownership, and continuous or uninterrupted for the statutory period. *Bishop v. Stackus*, 206 Md. 493, 112 A. 2d 472; *Peper v. Traeger*, 152 Md. 174, 136 A. 537, and cases there cited.

For the reasons above stated we must reverse the decree of the Chancellor dismissing the bill and remand the case for further proceedings not inconsistent with this opinion.

*Decree reversed with costs and case remanded for further proceedings not inconsistent with this opinion.*