BLICKENSTAFF ET AL. *v.* BROMLEY ET UX., ETC.

[No. 334, September Term, 1965.]

*Decided June 21, 1966.*

The cause was argued before PRESCOTT, C. J., and HAM-MOND, HORNEY, MARBURY and BARNES, JJ.

*David W. Byron* and *John H. Urner,* with whom were *Bushong, Byron & Moylan* on the brief, for the appellants.

*William J. Dwyer* for the appellees.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal involves a set of circumstances which illustrates why the practice of the legal profession and the administration of the law are interesting.

Although there are quite a number of named appellants, the only issue presented for determination is whether appellants Charles L. Blickenstaff and his wife have acquired title by adverse possession to a small parcel of land consisting of about 0.1 of an acre (marked on the plat below with a large X).

In 1956, the appellees, Walter Bromley and his wife, purchased a 200-acre farm in Pondsville area of Washington

County. At that time, the farm had on it a few fruit trees, but since then the Bromleys have developed the land into an extensive orchard. When a drought developed, the water in a little stream located on the subject property became important to the Bromleys.

The main portion of the Bromley farm is located some 600 feet to the southwest of the Pondsville-Cold Spring Road (Cold Spring Road), as said road is now located. The Bromleys' record title calls for a strip of land 30 feet wide and (about) 618 feet long "to the south side of the Cold Spring Road." This description appears in deeds at least as early as 1891, and, apparently, has been followed ever since, without change. As the area is now laid out, it will be noted that the 618 foot line not only goes to the south side of the Cold Spring Road, but extends all the way across said highway and beyond, so as to include the little stream which is the cause of this litigation. The discrepancy seems to be accounted for by a change in the location of the Cold Spring Road. The trial judge thought it had been relocated, and both sides in their briefs and at argument treated it as such; hence, we shall do likewise. (Appellants do not challenge the fact that the appellees have record title to the subject property.) But, if said road were relocated, it had to have occurred more than 50 years ago, for none of the witnesses, some of whose memories went back as far as 55 years, recollected any change in location.

At or before the turn of this Century, the strip of land was used as a means of access to the Bromley farm from the Cold Spring Road, and vice versa. At about this time, the Mt. Lena Road was constructed. It abutted and paralleled the strip. The Bromleys' predecessors in title closed off the strip and began utilizing the Mt. Lena Road many years before the Bromleys bought in 1956. For at least 50 years, no use has been made of any part of the strip by the Bromleys or their predecessors until about 1965, when the Bromleys began taking water from the stream.

The trial judge had this to say concerning the tiny parcel in question: "After the relocation of the road, the area in dispute was of no practical value [except possibly for water from the stream], was not fenced, was not cultivated or used for

Blickenstaff Property surrounding Parcel except for NAIL Roads.

IRON PIN & MARCH

IRON PIN ON CRE[ ] SET 1

EXIST AT LS

N.

67 TIE 33.2 R[ ] FT.

31.10 TIE

36.95 TIE

SO[ ]

IRO[ ]

1.2

BRIDGE

WALL

STREAM

97.1

Subject Parcel

NAIL

24" SYCAMORE ON LINE

IRON PIN ON EDGE WEARING SURFACE

18.0'

Rondsville Cold Spr. Road

N

Some 550 ft. to Bromley Farm

Mt. Lena Road

T

pasture * * *." We agree. The evidence discloses it to be scrubby, brush land, which, at some time, had a few trees thereon.

George F. Kuhn, aged 67, had lived in the immediate area all his life, and from 1918 to 1922 had lived on the Blickenstaff property. It then belonged to his grandparents, who had owned it since 1905. The Cold Spring Road was in its present location. He had occasion to go on the subject property; he had to keep "the bushes clean on the banks of the creek," and he got "some little" wood therefrom. He went back and forth from his grandparents' property and the subject parcel and "all the time [they were treated] as one property." He placed a "water box" on the bank of the stream and ran water through it to keep milk and other things cool. He never saw any of the Bromleys' predecessors come on the subject property. He saw his grandparents go upon the parcel and clean it up and to obtain bean poles and a little wood. His grandparents gave a Mr. Poole who lived across the road, upon Poole's request, permission to cut wood therefrom. No fence or any boundary line had ever been erected between the little parcel and his grandparents' property. When his grandparents lived there, they exercised "control [and] authority" over the parcel.

Laura Rudy's daughter and her husband owned and lived on the Blickenstaff property for twenty some years after 1931. Laura lived "right beside of it." She remembered her family cutting brush and trees off the subject parcel. She had "two big poplar trees" cut off it because she was afraid they would blow over and knock her house down.

Mr. Huntzberry had lived in the neighborhood since his birth in 1909. He lived just across the road from the parcel at the time of the hearing. After obtaining permission from Blickenstaff's predecessor, he cut bushes off the parcel and burned them. He also burned trash there. He has a flower bed "over there, and [he also] built up a great big ditch." He also cut wood therefrom. From his knowledge of the neighborhood and the people residing there, it was "general common knowledge in the neighborhood that Mr. Blickenstaff [and his predecessors] owned this strip [that portion of the strip on the northeast side of Cold Spring Road]."

Harold Hoffman was born in 1898, and remembered the area from about 1908. At one time, his family owned the Bromley farm, and he lived thereon. His family had never made any use of the subject parcel or the balance of the strip. The Mt. Lena Road had been there as long as he could remember, and it was used for ingress and egress. His family only considered that they owned the strip "to that particular road [Cold Spring]." To his knowledge, no portion of the strip had been used as a road for 55 years, and it "could have gone back much further."

The Blickenstaffs bought their property in 1961, but had rented it and lived thereon for 4 years prior thereto. Mr. Blickenstaff went upon the subject parcel whenever he desired. He bought "from the corner of the road [Cold Spring], down south or west." With his permission, Mr. Huntzberry, has cleaned the little parcel off, and keeps the grass cut.

The above facts are unchallenged: there is no testimony to the contrary. Mr. Bromley frankly and candidly stated that he had no use for, and made no use of, any portion of the strip until he needed water for his orcharding operations. When he went upon the subject parcel for that purpose, Mr. Blickenstaff, asserting ownership thereof, promptly ordered him off.

Thus it is seen that for a period of some fifty years this small "thumb" of land has been considered to be (and is "visibly") a part of the Blickenstaff farm. There is every indication that the visible and fixed boundaries thereof are the Mt. Lena and the Cold Spring roads.

The Bromleys rely on their record title and the failure of the Blickenstaffs to establish all of the essential elements of adverse possession. Of course, these elements are that the possession must be actual, hostile, open, notorious, exclusive, under claim of title or ownership, and continuous and uninterrupted for the statutory period of twenty years. *Bishop v. Stackus,* 206 Md. 493, 498; *Goen v. Sansbury,* 219 Md. 289. No question is raised concerning the right of the Blickenstaffs and their predecessors to tack their adverse possession, provided that they held such possession.

*Actual, Open and Notorious, and Exclusive Possession.*

We think we may conveniently consider these factors together. Formerly, in Maryland, an actual enclosure was neces-

sary in order to sustain a claim of adverse user, *Thistle v. Frostburg Coal Co.,* 10 Md. 129, *Lurman v. Hubner,* 75 Md. 268, but since the passage of what is now Code (1957), Article 75, § 33, this is no longer a prerequisite.

There is a well-recognized principle relative to the actual possession in adverse-possession cases to the effect that the character, location, and use of lands vary, and the type of possessory acts necessary to constitute actual possession in one case may not be essential in another. This Court has consistently given effect to the principle. Judge Hammond, for the Court in *Goen v. Sansbury, supra,* said:

> "It is true that in determining whether there has been actual possession of property, there must be considered its character and locality, and the uses and purposes for which it is naturally adapted, since possessory acts of an outlying and uncultivated piece of land may be proved by acts of ownership somewhat different from those required with regard to land under enclosure and actual cultivation."

See also *Bloodsworth v. Murray,* 138 Md. 631, 645, and *Gunby v. Quinn,* 156 Md. 123, 130, both involving swampland, and *Hub Bel Air, Inc. v. Hirsch,* 203 Md. 637.

The rule is not limited to this jurisdiction. See 4 *Tiffany Real Property,* (3rd ed.) § 1138; *Hayward v. Marker,* 55 N. W. 2d 143. Cf. *United States v. Fullard-Leo,* 331 U. S. 256. 3 Am. Jur. 2d, *Adverse Possession,* § 14, states the rule thus:

> "It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question. The standard to be applied to any particular tract of land is whether the possession comports with the ordinary management of similar lands by their owners, and if so, it furnishes satisfactory evidence of adverse possession."

After considering the character of the land and the attendant circumstances of the case, we think the possessory acts of dominion on the land by the Blickenstaffs, their licensees, and

their predecessors in title were sufficiently pronounced and continuous in nature to charge the owners of the Bromley property with notice that an adverse claim to the property was being asserted. The record indicates that the Mt. Lena Road is the thoroughfare from the Bromley farm to the Cold Spring Road, which leads to the nearby village of Pondsville. It can scarcely be seriously argued that over a period of some 50 years the owners of the Bromley property would not have seen and known of the clearing of brush, the cutting of bean poles, the felling of large trees, and the planting and maintaining of the flower bed thereon. Yet, over this extended period of time, there was never an assertion of ownership of the subject parcel by the owners of the Bromley tract, until Bromley wanted the water. We think these acts, when the character and location of the small parcel are considered, were sufficient to comport with the ordinary management of similar lands by owners.

Moreover, the visible boundaries of the Blickenstaff farm at the point in dispute, although there was no actual enclosure, were the Mt. Lena and Cold Spring Roads, and they had been such, without challenge or dispute, for some 2½ times the statutory period of 20 years. Generally, this, alone is sufficient to vest title in the adverse possessor, when accompanied by unequivocal acts of ownership. Cf. *Tamburo v. Miller,* 203 Md. 329; *Bishop v. Stackus,* 206 Md. 493.

There are two cases in an annotation in 97 A.L.R., at page 43 and 48, wherein the facts are quite similar to those of the case at bar. In *Goodloe v. Gusmus,* 97 So. 821 (Ala.), the Court held that title to a 30 foot strip had been acquired by the adverse possessor, even though his belief that the road was coincident with the boundary line was in error. In *Chostner v. Schrock,* 64 S. W. 2d 664 (Mo.), it was held that if the defendant believed the road was the line and he claimed the land to that line, his possession was adverse, and would ripen into title when held for the statutory period, regardless of what a survey showed or whether the road was the true line.

We, therefore, hold that the possession of the Blickenstaffs and their predecessors was *actual.*

Little need be added to show that the possession was "open and notorious." In *Bishop v. Stackus, supra,* this Court stated

that, in general, it may be said that those acts which go to make possession *actual*, likewise suffice to make it *visible* and *notorious*. In the instant case, the testimony is undisputed that the entire community, for a period far exceeding 20 years, considered the corner to be owned by the Blickenstaffs and their predecessors. Even Mr. Hoffman, whose family at one time owned the Bromley property, testified that he believed the Blickenstaffs' predecessor owned the parcel. We think and therefore hold that the possession was open, visible and notorious, and under claim of title.

This brings us to a consideration as to whether the possession was "exclusive." In 3 Am. Jur., 2d, § 50 *Adverse Possession*, it is stated:

> "In order to ripen into title, adverse possession must be exclusive, that is the claimant must hold possession of the land for himself, as his own, and not for another. * * *. Indeed 'exclusive possession' simply means that the disseisor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit. An adverse claimant's possession need not be absolutely exclusive, however; it need only be a type of possession which would characterize an owner's use."

We find this statement to be supported by the cases cited, and it is consistent with the previous holdings of this Court. *Blanch v. Collison,* 174 Md. 427; *Bishop v. Stackus, supra.* Compare *Wanex v. Hurst,* 188 Md. 520; *Gittings v. Moale,* 21 Md. 135; *Thistle v. Frostburg Coal Co.,* 10 Md. 129.

The facts as we have related them above, when considered in the light of the character of the small parcel here involved, disclose acts of dominion that would have been expected of an owner thereof under the circumstances, and there was no indication that the ownership of the parcel was shared with another or others. (Apparently Mr. and Mrs. Blickenstaff own their property as tenants by entirety. No question is raised relative to co-owners not being able, under proper circumstances, to acquire title by adverse user. Compare 3 Am. Jur. 2d, *Adverse Possession,* § 53 and *Tiffany, op. cit.,* § 1141.)

### Hostility of the Possession.

Judge Horney, for the Court, quite recently stated the meaning of "hostility" in adverse possession cases in this manner: "The 'hostility' essential to acquisition of title by adverse possession does not necessarily import enmity or ill will, but rather that the claimant's possession be unaccompanied by any recognition, express or inferable from the circumstances, of the real owner's right to the land." *Hungerford v. Hungerford,* 234 Md. 338, 340. See also *Clayton v. Jensen,* 240 Md. 337. Little elaboration on this element is needed. The facts, as we related them above, show no indication of any acknowledgement of the record owners' title for more than 50 years. There is no doubt, we think, that the Blickenstaffs' and their predecessors' possession was "hostile" in the sense that the term is used in adverse-possession law.

### Continuity of Possession.

Again, little need be said relative to this element. We stated above that no question concerning tacking is raised. We repeat that the possession of the small parcel by the Blickenstaffs' property owners has been uninterrupted for some 50 years or more, certainly for many more than 20. This satisfies the factor of continuity.

We hold that the Blickenstaffs have acquired title to the small parcel by adverse possession.

> *Decree reversed, and case remanded for the entry of a decree in accordance with this opinion; appellees to pay the costs.*