ROGERS ET AL. T/A Rogers and Brownley
*v.* BURNOPP ET UX.

[No. 54, September Term, 1971.]

*Decided November 10, 1971.*

358

The cause was submitted on briefs to HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

Submitted by *Jerome F. Connell, Sr.,* and *E. Milton Frosburg* for appellants.

Submitted by *Stanford H. Franklin, Harvey S. Levin* and *Mandel, Rocklin, Franklin & Drue* for appellees.

SINGLEY, J., delivered the opinion of the Court.

This controversy arose when John Rogers and his partner, R. Wendell Brownley (who will be referred to collectively as Rogers) endeavored to prevent Howell Q. Burnopp and his wife, Lola E. Burnopp (the Burnopps) from using a right of way which they claimed to have over the Rogers tract.

Rogers has owned since 1967 a tract of some 78 acres, which is now being subdivided, on the north side of Dicus Mill Road in Anne Arundel County. Since 1947, the Burnopps have owned some 58 acres lying east of the Rogers property on Dicus Mill Road. These two properties share a common boundary at some distance north of Dicus Mill Road, but are otherwise separated by a ten acre lot owned by Elvin F. Pyles and his wife, Bertha E. Pyles which fronts on Dicus Mill Road and lies between them.

The confusion surrounding the existence of the Burnopps' right of way can be understood from an examination of the histories of these properties. At about the turn of the century, what is now the Rogers property had been owned by David Wigley until 1899, when he conveyed this tract, lying west of a line described as

South 15° West 118 perches. In 1900, David Wigley acquired the adjoining tract to the east, a part of which is now the Burnopp and Pyles properties. This property lay east of a line described as North 18° East 118 perches. In 1905, David Wigley conveyed this property to his son Charles. In 1909, Charles Wigley conveyed a 20 acre tract which is that part of the property now owned by the Burnopps which shares a common boundary with the Rogers property. In the conveyance of this 20 acre tract, Charles attempted to convey to the transferees "a right-of-way 10 feet wide leading to and from the Benfield and Odenton County Roads [now Dicus Mill Road] along the West side of the Wigley Place [the North 18° East 118 perches line], * * * with the use thereof in common." The servient property so described is that property now owned by Pyles. Although at the time of the conveyance the 20 acre tract was completely landlocked, there is no contention here that the Burnopps' predecessors in title acquired a way of necessity. The creation of the easement in the 1909 conveyance in no way purported to affect the Rogers property.

The root of the difficulty would appear to lie in the variance in the courses of the common boundary (the 118 perches line) shared by the Rogers property with the properties lying to the east owned by the Burnopps and Pyles. The course and distance described in Rogers' chain of title traced back to 1854 was South 15° East 118 perches. A survey made for Rogers in 1967 developed that the "true" bearing of the eastern boundary of his property was South 11° 44' 00" East, and that 1948.68 feet was the "true" distance. The western boundary of the Burnopp and Pyles properties was originally described as North 18° East 118 perches. In 1940, a survey of the property now owned by Pyles developed that this course was North 19° 30' East, which a 1957 survey revised to North 19° 38' 10" East.

The subdivision of the Rogers property commencing in 1967 brought to light the discrepancy between the easternmost boundary of the Rogers property and west-

ernmost boundary of the property now owned by Pyles and Burnopp. This was partially resolved by the recording of an agreement between Rogers and Pyles, adopting as their joint boundary a line North 11° 28′ 40″ East 1949.14 feet, an agreement in which the Burnopps refused to join.

Although the property line is settled (North 11° 28′ 40″ East 1949.14 feet), so far as Rogers and Pyles are concerned, the unresolved problem is that the right of way which the Burnopps claim does not lie east of this line, as it should by the terms of the 1909 conveyance, but in fact lies west of the line on Rogers' property.

In September, 1969, Rogers commenced an equity proceeding in the Circuit Court for Anne Arundel County, in which he sought an injunction requiring the Burnopps to remove a fence allegedly placed on Rogers' property by them, and an order restraining the Burnopps from encroaching on his property. When it appeared that a title dispute was at the heart of the matter, *see Moore v. McAllister,* 216 Md. 497, 141 A. 2d 176 (1958), the case was transferred to the law side of the court and tried by the court without a jury as though it had been an action in ejectment. From a judgment for the Burnopps for costs, Rogers has appealed.

We propose to affirm the judgment, being mindful of the mandate of Maryland Rule 886, that "[w]hen an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous * * *." The law applicable to this case is that of *Garrett v. Gray,* 258 Md. 363, 375, 266 A. 2d 21 (1970), where Judge Finan, speaking for the Court, adopted the language of *Smith v. Shiebeck,* 180 Md. 412, 419, 24 A. 2d 795 (1942) :

"* * * It is a familiar principle that to establish a right of way by prescription it is necessary to prove an adverse, exclusive and un-

interrupted use of the way for twenty years. The term 'adverse use' means use without license or permission, for an adverse right of an easement cannot grow out of a mere permissive enjoyment. Where, however, a person has used a right of way for twenty years unexplained, it is fair to presume that the use has been under a claim of right, unless it appears to have been by permission. In other words, the use of a way whenever one sees fit over the land of another, without asking leave is an adverse use, and the burden is upon the owner of the land to show that the use of the way was by license or contract inconsistent with a claim of right. *Cox v. Forrest,* 60 Md. 74; *Waters v. Snouffer,* 88 Md. 391, 41 A. 785; *Hansel v. Collins,* 180 Md. 209, 23 A. 2d 686."

The elements involved in the acquisition of prescriptive rights have been recently considered in *Kenneth T. Bosley v. Grand Lodge of Ancient Free and Accepted Masons,* 263 Md. 303, 283 A. 2d 587 (1971).

Nicholas D. Frankos, the Burnopps' predecessor in title, testified that he had owned the property from 1944 until he sold it to the Burnopps in 1947, and that during this period, he used the road across Rogers' land as the only means of access to the house occupied by the Burnopps, who were his tenants during at least part of this time.

Curtis Mitchell, who owned the Rogers tract from 1942 to 1967, described the right of way as an "indentation" or "washout," and said that he had placed a fence wherever "it was the easiest," to keep his cattle in the field which adjoined it. He had seen an automobile which was stuck in the right of way pulled out by horses. He knew that Burnopp had bulldozed the right of way, "was glad to see it getting leveled off," "was glad to see [himself] getting something done for nothing."

Bernard Pyles, Mr. Burnopp's neighbor, testified that

he had been familiar with the right of way for at least 25 years, had assumed that it belonged to Mr. Burnopp, and since 1962 had used it, with Burnopp's permission, to get to his own house.

Linton B. Pumphrey, who was in the grocery business from 1945 until 1955, testified that he used the right of way several times a month to make deliveries to the Burnopps' house.

Other witnesses testified that the road had existed in its present location as far back as 1939, and aerial photographs introduced in evidence showed the road delineated by hedgerows in 1957 and in 1963. Strangely enough, James D. Hicks, who in 1957 surveyed the Pyles property adjoining the Rogers tract on the east, and surveyed the Rogers tract in 1967 and 1968, testified that he was unaware of the existence of the road.

Mr. Burnopp testified that he had used the road as long as he had occupied his property and that for a considerable period, because the terrain was heavily wooded, he had no other access to the property. Burnopp also said that he had a neighbor cover and grade the road with a bulldozer.

Based on its review of the testimony and evidence, the lower court made the following findings of fact:

(i) That the right of way was located on Rogers' land although it was not mentioned in his chain of title;

(ii) That it had existed for many years and for more than 20 years of the period of the Burnopps' ownership;

(iii) That the location of the right of way had previously never been challenged;

(iv) That the boundaries of the right of way had been visible for more than 20 years; and

(v) That the Burnopps had openly, continuously, exclusively and uninterruptedly made an adverse use of the right of way for more than 20 years.

On our review of the record, we cannot say that these findings were clearly erroneous.

These findings of fact brought the controversy with-

in the ambit of the rule of *Tamburo v. Miller,* 203 Md. 329, 336, 100 A. 2d 818 (1953) :

> "[T]he better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will vest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct or, in other words, the fact that the possession was due to inadvertence, ignorance or mistake is entirely immaterial."

which we quoted with approval in *Supreme Builders v. Redmiles,* 250 Md. 446, 455, 243 A. 2d 500 (1968).

Rogers makes two points in which we find no merit. First, he says that the lower court should have required that the limits of the right of way be established with certainty because it was claimed without color of title.[1] This is not the rule of the cases on which Rogers relies. Rather, the proposition, correctly stated, is that adverse possession without color of title extends only to the land actually occupied, *Hines v. Symington,* 137 Md. 441, 444, 112 A. 814 (1921). This presents no problem in a case such as this, where the road was clearly visible, *Blickenstaff v. Bromley,* 243 Md. 164, 220 A. 2d 558 (1966) ; *Clayton v. Jensen,* 240 Md. 337, 214 A. 2d 154 (1965). Secondly, he says that the court erred in not granting the injunctive relief which he prayed in his bill. The short answer to this is that while an injunction may issue as ancillary relief in an action at law, Rules BF 40, BF 43, the judgment entered in the Burnopps' favor was completely dispositive of the rights of the parties, and amounted to a final determination that the Burnopps had

---

1. Our earlier cases must be examined in the light of the fact that prior to the adoption of Section 2 of Chapter 177 of the Laws of 1852, now Code Art. 75, § 33 it was necessary to prove actual enclosure in order to sustain a claim of adverse user without color of title, *Lurman v. Hubner,* 75 Md. 268, 270, 23 A. 646 (1892).

acquired by prescription an easement over a part of Rogers' land which lay between the fences.

We find no reason to disturb the result reached below.

*Judgment affirmed, costs to be paid by appellants.*