483 A.2d 382

Narue MIKLASZ

v.

G.W. STONE, INC., et al.

No. 99, Sept. Term, 1984.

Court of Special Appeals of Maryland.

Nov. 13, 1984.

Phillips P. O'Shaughnessy, Baltimore, with whom were Sandbower, Gabler & O'Shaughnessy and Smith, Somerville & Case, Baltimore, on brief, for appellant.

Christopher H. Hill, Glen Burnie, for appellee, G.W. Stone, Inc.

Gordon B. Heyman and Dackman & Heyman on brief for appellee, Key Federal Savings and Loan Assoc.

Argued before BLOOM and GETTY, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

GETTY, Judge.

This is an appeal from a decision of the Circuit Court for Anne Arundel County denying appellant's claim to certain land by adverse possession. The trial court held that appellant had established title to that portion of the property that she had enclosed by fencing, but denied her claim to adjoining land that she had improved by filling, seeding and removing certain buildings. The court considered the improvements as "gratuitous acts ... to protect [her] own property." Appellant contends that the trial court erred by considering appellant's subjective intent as dispositive of her adverse possession claim.

Marie Miklasz (hereinafter referred to as "Miklasz"), plaintiff-appellant, owned certain land in Anne Arundel County, Maryland. For more than twenty years prior to the events giving rise to this suit, she and her husband engaged in various activities on adjoining land owned by the predecessor in interest of the defendant-appellee G.W. Stone, Inc. (hereinafter referred to as "Stone"). On four different portions of that land Miklasz created an unim-

proved access road, tore down two shanty houses, filled in a swamp area, and erected a fence. Miklasz then used a portion of the former shanty area as picnic grounds, and different portions of the former swamp land as picnic and recreational grounds, a parking lot and, for approximately one year, a horse pasture.

After Stone purchased this adjoining land and began to develop it, Miklasz sued Stone and its lender, appellee Key Federal Savings and Loan Association, seeking a decree quieting title in her favor by the doctrine of adverse possession and also seeking damages for injuries alleged to have been caused by Stone's activities on the disputed land.

At trial, proof of damages was reserved pending resolution of the title issue. At the conclusion of Miklasz's case-in-chief, Stone moved to dismiss. The chancellor denied this motion, whereupon Stone conceded that Miklasz had demonstrated title by adverse possession to the area enclosed by her fence. Stone then submitted its case and, although the record is ambiguous on this point, appears again to have made a motion to dismiss, this time only as to Miklasz's claims to land other than the fenced portion. After Miklasz was heard in opposition to what she understood to be a second "partial" motion to dismiss, the chancellor in an oral opinion found that Miklasz had obtained title only to that portion of the disputed land enclosed by her fence.

The trial court recognized that the adverse possession claim involved four separate parcels and denied appellee's motion to dismiss, filed pursuant to Md.Rule 535. *See Lee Oldsmobile v. Kaiden,* 32 Md.App. 556, 363 A.2d 270 (1976); Rule 535 does not provide for partial rulings. The following colloquy then took place:

Appellee: Your Honor, in the event we were to say that we would accept an order for the property beyond the fence line, would the Court be inclined to issue such an order without further evidence from the defendant?

Court: I might be.

Appellee: We would accept such an order, Your Honor.

After this exchange, opposing counsel argued the issue of adverse possession as to the three areas beyond the fenced-in parcel. Appellant's counsel was understandably confused by the procedure employed. At trial, appellee stated that he was making a motion to dismiss as to all claims, except for the fenced area. Before us, appellee argues that he did not intend to make a second motion to dismiss, but was submitting his case without offering any evidence. The trial judge considered, and said, that appellee was submitting.

 A motion to dismiss under Rule 535 at the end of the entire case is improper, because all of the evidence is then before the trier of the facts and determination of legal sufficiency becomes an inseparable part of the court's decision. *Lewis v. Germantown Ins. Co.*, 251 Md. 535, 248 A.2d 468 (1968). In this case the court properly denied the initial motion to dismiss, because the appellant was entitled to have the legal sufficiency of the evidence viewed in the light most favorable to her. Her evidence of adverse possession, at that point, stands undisputed, and the appellant was entitled to every favorable inference which may reasonably be drawn from her testimony. *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 248 Md. 267, 235 A.2d 735 (1967); *Testerman v. H & R Block, Inc.*, 22 Md.App. 320, 324 A.2d 145 (1974) (*rev'd* on other grounds, 275 Md. 36, 338 A.2d 48 (1975)).

 For the purpose of this case we shall consider that appellee submitted its case without offering evidence. Initially, the motion under Rule 535 was denied; what developed thereafter was not intended to be a renewal of that motion. We point out, however, that the court gave appellee an advantage to which it was not entitled by indicating what it "might" do if appellee submitted with a concession as to a part of appellant's claim. By obtaining, at least, an implied indication of the court's intention, appellee avoided

the risk that his own evidence might supplement appellant's evidence enough to provide the legal sufficiency.

On appeal, appellant contends that the trial court committed reversible error by considering as dispositive appellant's subjective intent respecting the land that appellant possessed for the prescriptive period.

■■■ In order to ripen into title, the adverse possession must be continuous, notorious, actual, hostile and embrace all of the disputed area. *Freed v. Cloverlea Citizens Association, Inc.*, 246 Md. 288, 228 A.2d 421 (1967). As recognized by the Court of Appeals in *Blickenstaff v. Bromley*, 243 Md. 164, 220 A.2d 558 (1966), there is no longer any requirement that the land claimed by the adverse possessor be enclosed. The Court said:

> "Formerly, in Maryland, an actual enclosure was necessary in order to sustain a claim of adverse user, *Thistle v. Frostburg Coal Co.*, 10 Md. 129; *Lurman v. Hubner*, 75 Md. 268 [23 A. 646], but since the passage of what is now Code (1957) Article 75, Sec. 33, this is no longer a prerequisite."

Equally clear is that adverse possession is to be determined by the objective manifestations of the adverse use, not by the subjective intent of the possessor. In *Supreme Builders v. Redmiles*, 250 Md. 446, 243 A.2d 500 (1968), Mrs. Redmiles testified that she didn't claim any more than 150 feet of property and that she didn't want any more than she had bought and paid for. Based on this testimony, Supreme argued that the intention to hold adversely had been rebutted. Citing *Freed, supra,* and *Tamburo v. Miller,* 203 Md. 329, 100 A.2d 818 (1953), the Court stated:

> "The modern trend and the better rule is that where the visible boundaries have existed for the period set forth in the Statute of Limitations, title will rest in the adverse possessor where there is evidence of unequivocal acts of ownership. In this view it is immaterial that the holder supposed the visible boundary to be correct, or, in other

words, the fact that the possession was due to inadvertence, ignorance, or mistake, is entirely immaterial."

The possessory acts in *Redmiles* included maintaining the same yard for over thirty years during which time they planted various shrubs and flowers. In *Blickenstaff, supra,* the adverse claimants exercised dominion over the land adjoining a country road by clearing bushes, gathering wood, planting and cutting trees. The appellant herein filled in a swamp that covered approximately one acre of land, planted grass and shrubs in the area which was used for recreational purposes, pastured horses for a fee in an area which she enclosed by a fence for a short period of time, made a parking lot for the use of her tenants in a separate building, filled in water wells, tore down two dilapidated small dwellings and constructed a road over the ground which was utilized by the tenants, as well as by service personnel, as a means of ingress and egress. In addition, she fenced a separate area.

We find it difficult to envision a more complete appropriation of or possessory dominion over disputed land. Appellant's intent, which we have said is not controlling in determining a claim by adverse possession, is best demonstrated by the fact that she called the police when appellee arrived on the property and started clearing the land.

The trial court did not reject the testimony of appellant and her witnesses concerning her activities in regard to the property over a thirty-five year period. With respect to the filling and maintenance of the swamp area, the court said that appellant's intent was "to protect their property. And I don't think that activity is an interest in—with any possessory intent or constitutes a open, notorious taking of property by adverse possession." With reference to the buildings which appellant tore down, the court concluded—"they did that on their own as a gratuitous act, not with the intent of obtaining title by adverse possession." Regarding the road, the court found that continuous use had not been shown, because the tenants were the users. The use by the

tenants, however, is sufficient. In *Schlueter v. Ackerman,*
215 Md. 173, 137 A.2d 179 (1957), an occupant of property
for ten years who thereafter rented the property to tenants
for the next twenty-four years was held to have good title
by adverse possession.

 Because Miklasz is not claiming these three parcels
under color of title, her adverse possession can only extend
to land she actually occupied. *Rogers v. Burnopp,* 263 Md.
357, 363, 283 A.2d 367 (1971) (citations omitted). It follows
from this that at trial Miklasz had the burden of establish-
ing, by a preponderance of the evidence, what the bound-
aries of her actual possession were. Indeed, we accept the
Georgia court's reasoning that

> where the plaintiff claiming adverse possession without
> color of title goes into possession of only a small part of a
> described tract, but the evidence fails to distinguish the
> part of which he was in possession from that of which he
> was not, a verdict in favor of defendant is demanded.
> *Carter v. Becton,* 250 Ga. 617, 300 S.E.2d 152, 154 (1983).

Miklasz relies upon her surveyor's markings upon Stone's
own subdivision map to establish the parts she actually
possessed. Stone objects that Miklasz's surveyor, finding a
dearth of evidence in the field, relied heavily upon Miklasz's
description of her claim in deciding where to locate his "use
lines." Although it is evident that Stone's recent develop-
ment activities in the disputed area could have destroyed
other evidence of Miklasz's adverse possession, the question
remains whether the evidence produced at trial (i.e., the
testimony and map offered by Miklasz's surveyor) was
sufficient to distinguish which parts of Stone's land Miklasz
actually possessed. More precisely, we must decide wheth-
er Miklasz's proposed distinction is so uncertain as to com-
pel us to sustain the trial court's denial of her claim to the
three parcels at issue.

 The Court of Appeals has provided us with some
guidance. In *Rogers, supra,* the plaintiff proved an ease-
ment by prescription. On appeal, the defendant argued

that the trial court "should have required that the limits of the right of way be established with certainty because it was claimed without color of title." 263 Md. at 363, 283 A.2d 367. The Court rejected this interpretation of Maryland case law, stating that "the proposition, correctly stated, is that adverse possession without color of title extends only to the land actually occupied." *Id.* The Court then observed, in a footnote, that

> Our earlier cases must be examined in the light of the fact that prior to the adoption of Section 2 of Chapter 177 of the Laws of 1852, now Code Art. 75, § 33 it was necessary to prove actual enclosure in order to sustain a claim of adverse user without color of title, *Lurman v. Hubner,* 75 Md. 268, 270, 23 A. 646 (1892). *Id.*

Absent an enclosure of the disputed land, in other words, some measure of uncertainty regarding the precise boundaries of the adverse possession claimant's actual possession is to be expected in claims made without color of title. Hence the law does not require certainty; substantial evidence will suffice.

 In *Rogers,* this requirement posed no problem because the boundaries were clearly visible. *Id.* In the instant case, the boundaries are not so clearly visible and Miklasz did face a problem. We find, however, that she met her evidentiary burden. Miklasz's map, prepared by a licensed surveyor pursuant to Miklasz's description and some surviving physical evidence (e.g., a gravel drive, a parking lot, an old wire fence, trees making up a hedgerow, a picnic table in the midst of a maintained lawn, and a washline) amounts to more than speculation. It is competent and substantial evidence of the geographical extent of actual possession and was properly admitted by the court below.

We hold that Miklasz clearly established her use of the three parcels at issue in this appeal to be exclusive, notorious, hostile and actual for the requisite twenty years. The trial court erred in considering Miklasz's subjective intent.

It remains for the lower court to make a final determination—based on all the evidence—as to the proper boundaries of these three parcels so as to include only those areas Miklasz actually possessed.

Whether Mrs. Miklasz established adverse possession to land on either side of the road she constructed is not entirely clear from the record. On remand, the trial court should determine whether such adverse possession has been established in the area surrounding the road, or whether she has proved only a prescriptive easement over that area where the road begins and ends.

Thus we affirm the court's conclusion as to the fenced parcel and reverse as to the remaining three, remanding for a metes and bounds description of the additional land to be awarded and for a determination of the damages sustained by Miklasz by reason of Stone's trespass.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR DETERMINATION OF A METES AND BOUNDS DESCRIPTION OF THE AREA OWNED BY APPELLANT AND FOR DETERMINATION OF DAMAGES.

COSTS ASSESSED TO APPELLEES.