498 A.2d 661

**Richard L. PETERS**

v.

**Elmer V. STAUBITZ.**

**No. 122, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Oct. 8, 1985.

Thomas C. Codd (Downie D. Codd and Codd & Codd on brief) Severna Park, for appellant.

Paul M. Anderton, Annapolis, for appellee.

Before BISHOP, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROSALYN B. BELL, Judge.

In this appeal, we decide whether the trial court, following a remand from the Court of Appeals, correctly applied

the law in determining that the claimant acquired the disputed property by adverse possession.

Elmer V. Staubitz (appellee/claimant) acquired title to lot 232 located at Whitehall Beach in Anne Arundel County in 1955. Richard L. Peters (appellant/record owner) is the present owner of lot 233 at Whitehall Beach.[1] Lot 233 is adjoined on the east by lot 232. Both lots 232 and 233 are bound on the north by Red Cedar Road and on the south by the Whitehall River.

In April 1980, the Costellos, Peters' predecessors in interest, employed a surveyor to determine the exact eastern boundary of lot 233 and to stake the deeded property line. The survey indicated that an existing barbed wire fence, erected around 1940 by the prior owner of lot 233, was not located along its eastern boundary. Instead, it crossed the southeastern corner of lot 233 and the northwestern corner of lot 232 forming two triangles—one on lot 232, the other on lot 233. The latter triangle, which constitutes the disputed property, is bound on the east by the staked property line, on the south by the Whitehall River and on the west by the barbed wire fence. This area is 270 feet deep and 14.53 feet wide at the Whitehall River.

Staubitz brought suit against the Costellos in the Circuit Court for Anne Arundel County in September 1980 to quiet title, claiming that he had acquired the strip of land by adverse possession. Following a bench trial, the court issued a memorandum opinion in which it found that

"[I]t is also uncontroverted that the fence upon which Mr. Staubitz bases his claim was originally erected as a boundary between lots 232 and 233. The testimony at trial revealed that the fence was installed by [the record owners' predecessors in interest] to keep their cows from going on to Mr. Staubitz's father's property. It also

---

1. When this suit began, William and Janice Costello owned lot 233. In September 1984, Richard L. Peters replaced William Costello, et al., as party defendant.

revealed that the fence was intended, and did serve as the boundary of the two lots."

Based upon these findings it concluded that Staubitz had acquired title to the disputed strip of land by adverse possession.

The Costellos noted an appeal to this Court. In an unreported per curiam opinion, *Costello v. Staubitz*, No. 57, September Term, 1982, filed 16 November 1982, we affirmed the trial court's decision. Subsequently, the record owners petitioned the Court of Appeals for a writ of certiorari which was granted.

The Court of Appeals, in *Costello v. Staubitz*, 300 Md. 60, 475 A.2d 1185 (1984), reversed. It held that where, as in the present case, a record owner or previous record owner erects a fence for his own purposes, within his land, its existence "does not support an inference that the fence is a visible boundary delineating the extent of a claimant's adverse possession." *Id.* at 69, 475 A.2d 1185. The Court further explained that under these circumstances the fence "did not constitute evidence of adverse possession and was not an appropriate factor to be taken into account in determining the extent of the claimant's adverse possession." *Id.* at 74, 475 A.2d 1185. It then directed the case be remanded to the trial court to determine "what, if any, land was actually occupied by the claimant for the statutorily prescribed twenty-year period." *Id.*

On remand, the court made detailed findings concerning Staubitz's acts of dominion over the disputed property and their duration. Based on these findings, it ruled that Staubitz "has acquired title to the disputed strip of land between Lots 232 and 233 by adverse possession."

Peters then noted this appeal in which he raises the following questions:

I. Did the court err, as a matter of law, in using the fence to delineate the extent of appellee's actual occupancy since it was erected by one of appellant's predecessors in title for his own purposes and within his own lands?

II. Was the court clearly erroneous in finding that all of the disputed property had been actually occupied—openly, exclusively, adversely and continuously, under claim of ownership for the statutorily prescribed period?

## I. EXISTENCE OF THE FENCE

█ In *Costello v. Staubitz, supra,* the late Judge Davidson, writing for the Court of Appeals, set forth the principles applicable to a determination of whether a visible line of demarcation constitutes evidence of adverse possession:

"The following general principles emerge from this Court's previous decisions in adverse possession cases in which a visible line of demarcation was a factor:

1) The existence of a visible line of demarcation ordinarily does not constitute evidence of adverse possession when:

a) it was created by a record owner, for the record owner's own purposes, within the record owner's land ... or

b) it was created by a party claiming title by adverse possession for the purpose of claiming the visible line of demarcation as a boundary only if it is in fact coincident with the actual boundary ...

2) The existence of a visible line of demarcation ordinarily constitutes some evidence of adverse possession when:

a) it was created by a party claiming title by adverse possession for the purpose of claiming the visible line of demarcation as a visible boundary delineating the extent of the claimed adverse possession ... or

b) there is no evidence to show by whom and for what purpose the line of demarcation was created...." (citations omitted)

*Costello,* 300 Md. at 72–73, 475 A.2d 1185.

Appellant asserts that even though the court, on remand, acknowledged the rule of *Costello,* "[n]evertheless, ... [it] once again improperly [relied] on the fence [and] proceeded to find ... that [the claimant] had acquired title, by adverse

possession, to the entire parcel." In support of this argument he refers us to the following language in the court's opinion:

"[I]t does represent a visible border to the east of which the claimant, Mr. Staubitz, actually occupied the adverse property in a manner which comported with the ordinary management of similar lands by their owners."

It is appellant's contention that this statement shows the court attempted "to make a distinction, not recognized by the Court of Appeals decision, between a 'boundary' and a 'border', in order to rely on the fence to delineate the extent of Appellee's possession."

In *Costello v. Staubitz, supra,* the Court of Appeals stated that a claimant could not rely on the existence of a fence erected by the record owners or previous record owners to establish the extent of his claim of adverse possession. *Id.* Rather, he is required to demonstrate his acts of dominion over the disputed land for the required statutory period. *Id.* If he does so, the court need not totally ignore the fact that there is a fence in existence because it is evidence of the outer limit of physical property over which he could reasonably have exercised dominion.

Our review of the court's ruling demonstrates that it was based upon the chancellor's finding that appellee had satisfied the requirements of the doctrine of adverse possession through his acts of dominion over the disputed property. The chancellor merely referred to the fence for what it was—"a visible border."

## II. ADVERSE POSSESSION

■ To acquire title by adverse possession, a claimant must demonstrate that his occupation of the land has been actual, hostile, notorious, exclusive, under claim of title and continuous or uninterrupted for twenty years. *Costello v. Staubitz,* 300 Md. at 67, 475 A.2d 1185; *Blickenstaff v. Bromley,* 243 Md. 164, 220 A.2d 558 (1966); *Goen v. Sansbury,* 219 Md. 289, 149 A.2d 17 (1959); *Miklasz v. G.W.*

*Stone, Inc.,* 60 Md.App. 438, 483 A.2d 382 (1984). Moreover, where, as here, adverse possession is not claimed under color of title, it extends only to the land actually occupied by the claimant. *Costello v. Staubitz,* 300 Md. at 68, 475 A.2d 1185; *Miklasz v. G.W. Stone, Inc.,* 60 Md.App. at 445, 483 A.2d 382. Finally, in determining whether the claimant's acts of dominion constitute adverse possession, the court is to consider the character of the land and the uses and purposes to which it is adapted because "the type of possessory acts necessary to constitute actual possession in one case may not be essential in another." *Blickenstaff v. Bromley,* 243 Md. at 171, 220 A.2d 558. *Goen v. Sansbury,* 219 Md. at 296, 149 A.2d 17.

■ Appellant maintains that the court was clearly erroneous in finding that appellee acquired title to the entire strip of disputed property by adverse possession. He claims that the court "cites various uses of the disputed property by the Appellee, but fails to make specific findings as to the location and duration of these uses or whether they were hostile, open, notorious, continuous, uninterrupted and under claim of ownership ... for twenty years." He then asserts that since the court did not make the requisite findings "there is no basis for [its ruling] that all of the land was actually occupied by the claimant for the statutorily prescribed twenty year period."

We agree with appellant, but not totally. Let us explain.

The court found that appellee's possessory acts of dominion on the disputed land

"revealed a pattern of activity consistent with ownership. A bulkhead constructed of pipes and cement extended from Mr. Staubitz' record property into the adversed property. Mr. Staubitz and his then son-in-law built the bulkhead around 1955 ... Immediately to the west of the bulkhead was a boat landing built by Mr. Staubitz in the early 1950's ... This landing, known to the claimant as a railway, consisted of several logs arranged in a slide-like device, and was attached to a willow tree that

was on the westernmost border of the disputed property ... Directly behind the railway, inland, is a barbeque or fire pit ... [which] is made of concrete blocks stacked upon each other and once were mortared together ... The pit was constructed in 1957 ... Somewhat further inland from the pit a substantial building was constructed by Mr. Staubitz. This building, a combination privy and boathouse, was constructed, according to Mr. Staubitz, in the 1950's ... This boathouse was built on the site of an earlier constructed building ... A boat was stored and painted on the land by the west side of the boathouse ... Further inland, Mr. Staubitz planted a line of three poplar trees on the contested property and parallel to the wire fence. These trees, grown from cuttings were planted either in the 1940's according to Mr. Staubitz ... or in the early 1950's, according to Mr. McMullen who gave the cuttings to Mr. Staubitz ... These are the only poplars on the disputed property and are the dominent [sic] natural feature located there. The property, with the exception of the improvements already mentioned, was left in its wild state as Mr. Staubitz wished the land to be an animal sanctuary."

Additionally, the court considered the character and location of the land and the uses for which it is naturally adapted. Finally, it took into account the attitudes of longtime and former residents—"All four of the residents testifying for the claimant, supported his assertions as to the improvements made and as to [appellee's] claim to the disputed property." Based upon all of these factors, it found that the claimant "actually occupied all the contested property east of the barbed wire fence."

The evidence amply supports the court's findings that appellee actually, exclusively, openly, notoriously and for the requisite statutory period occupied the portion of the disputed property where the fire pit, the boathouse and the poplar trees are located. Appellee testified about the nature and duration of each of these improvements and introduced family photographs from the 1950's to 1980 showing

his use of the areas in question. Mr. Hook, a fifty-three year old neighbor at Whitehall Beach, who had occupied a summer home next door to appellee since their childhood, substantiated appellee's testimony. Hook related that "since [he] was old enough to remember" appellee had utilized the fire pit on the disputed property "for burning trash and steaming crabs." He also stated that the shed had been on the property for more than thirty-four years and that it "was [a] combination privy and boathouse."

Appellant concedes that while these "combined alleged uses of the property" may constitute "unequivocal acts of ownership," appellee, nevertheless, failed to show that he used the entire property for the statutory period. We agree. Appellee seeks to acquire ownership of the disputed land without color of title; therefore, his adverse possession can extend only to that portion which he actually occupied. *Costello v. Staubitz, supra; Miklasz v. G.W. Stone, Inc., supra.* While there is no precise formula for determining what constitutes actual occupation, it would be virtually impossible to require that a claimant use every square inch of the disputed property for every moment of the statutory period to establish adverse possession. In determining whether the criteria for adverse possession have been satisfied, here, we must examine the nature of the property, its size and the type of uses for which it is suitable. *Blickenstaff v. Bromley, supra; Goen v. Sansbury, supra.*

This particular property is triangular in shape, and is only 14.53 feet wide at its greatest width. Because of its size and shape, potential uses of it are limited. The chancellor's finding that appellee occupied the width and length of the triangle from the Whitehall River to the animal sanctuary is supported by the record. We hold that he was not clearly erroneous. Md.Rule 1086.

The evidence, however, does not support the court's finding that appellee acquired title to the remainder of the triangle where the animal sanctuary is located. Under some circumstances, a claimant's creation of an animal

sanctuary might constitute an actual use for purposes of adverse possession. In this case, however, there is no evidence that appellee used the animal sanctuary. He merely allowed "[a] large part of the disputed triangle ... to grow wild [because he] desires the wild nature of the ground as an animal sanctuary...." This is not sufficient. We hold that the court erred in finding that appellee acquired title to that portion of the disputed land by adverse possession. On remand, the court must define the exact demarcation of the property actually occupied by appellee for the statutorily prescribed period.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE SHARED EQUALLY BY APPELLANT AND APPELLEE.