582 A.2d 547

**ORFANOS CONTRACTORS, INC.**

v.

**Louis M. SCHAEFER, et al.**

**No. 136, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Nov. 29, 1990.

Anthony P. Palaigos (Blum, Yumkas, Mailman, Gutman & Denick, P.A., on the brief), Baltimore, for appellant.

Michael P. Smith (Weinberg and Green, Russell R. Reno, Thomas C. Valkenet and Venable, Baetjer & Howard, on the brief), Baltimore, for appellees.

Argued before ROSALYN B. BELL, WENNER and CATHELL, JJ.

ROSALYN B. BELL, Judge.

Orfanos Contractors, Inc. (Orfanos) instituted suit against Louis M. Schaefer, et al. in the Circuit Court for Baltimore City, seeking declaratory and injunctive relief. For purposes of this appeal, the relevant litigants are: Schaefer & Strohminger, Inc., S & S Management Services, Inc. (S & S Management), Louda Limited Partnership, and David H. Murdock, t/a Murdock Investment Company (Murdock).[1] The dispute was over a paper street designated as

---

1. The other defendants were Anna J. Schaefer, Henry A. Strohminger, Mary Strohminger, George H. Strohminger and Gertrude Strohminger. Gertrude Strohminger died long before this controversy arose and Orfanos dismissed the complaint against her. At the close of all the

Fleet Parcel Nos. 1, 2 and 3.[2]  Orfanos sought a declaration that it possessed a private right of ingress and egress over that paper street.  Orfanos also sought a permanent injunction, preventing Louis M. Schaefer and the other appellees from placing objects on any part of the paper street.  Appellee Schaefer & Strohminger, Inc. counterclaimed, seeking title to a portion of the parcel through adverse possession.  After a nonjury trial, the trial judge ruled against Orfanos and for the appellees on all counts, including the counterclaim.  This appeal followed.

Three issues are raised for our consideration:

— Whether the trial court erred in ruling that Schaefer & Strohminger, Inc. had acquired title by adverse possession to a portion of Fleet Parcel No. 2.

— Whether the trial court erred by not ruling on Orfanos's claim of an implied easement over the portion of Fleet Parcel No. 2 that Schaefer & Strohminger, Inc. acquired by adverse possession.

— Whether the trial court erred in denying Orfanos an implied easement to use Fleet Street in both directions.

We hold there was no error and explain.

## BACKGROUND

Orfanos is a construction contractor that stores materials and heavy equipment on real estate in Baltimore City. Orfanos is the record owner of the properties designated as Lot 73A, Lot 76–119, Fleet Parcel No. 1, and Fleet Parcel No. 2.  Louis M. Schaefer and the other appellees are the

---

evidence, the court dismissed all claims against S & S Management and Murdock.  Orfanos has not raised the dismissal of these claims in this appeal.

**2.** A "paper street" is a street which appears only on a plat, map or other paper, the dedication of which has never been accepted for public use, prepared for use, or actually used as a street.  *See Robidoux v. Pelletier,* 120 R.I. 425, 391 A.2d 1150, 1157 (R.I.1978).  Fleet Street, as a dedicated public street, ends at Bonsal Street.  The paper street shows on the plat as a proposed continuation of the existing Fleet Street.

record owners of Lots 75, 120, 120A, 121, and Fleet Parcel No. 3. S & S Management owns Lots 75, 120, and 121. Louda Limited Partnership, a Maryland limited partnership, owns Lot 120A and Fleet Parcel No. 3.[3] Louda Limited Partnership purchased Fleet Parcel No. 3 after Orfanos instituted these proceedings.[4] Schaefer & Strohminger, Inc., a Maryland corporation, leases Lots 75, 120, 120A, 121 and Fleet Parcel No. 3 from Appellees S & S Management and Louda Limited Partnership.

Schaefer & Strohminger has operated an automobile dealership on Lots 75 and 121, at the corner of Eastern and Dundalk, for 25 years. Since 1965, Schaefer & Strohminger has leased Lot 75, which bounds Fleet Parcel No. 2, and used it as a body shop. The record reflects that Schaefer & Strohminger maintained Fleet Parcel No. 2 from 1965 to the present. The details of that use will be related later. The record indicates that Schaefer & Strohminger also used a portion of Fleet Parcel No. 2 for the storage of what Orfanos alleged were hazardous materials. That activity was terminated by a court order on January 27, 1989. Also, in the late 1970s, Schaefer & Strohminger placed a trailer across Fleet Parcel No. 2 between Lots 74 and 75. This trailer was removed in June of 1988 upon the written demand of Orfanos and was in place less than 20 years.

Fleet Parcel Nos. 1, 2 and 3 run amongst the various properties described. These parcels intersect Cornwall Street and run from Bonsal Street to Folcroft Street. Bonsal, Folcroft and Cornwall Streets are all public roads. Fleet Parcel Nos. 1, 2 and 3 have always been privately owned and do not constitute a public road.

While there is a dispute over whether the Fleet parcels have ever been used as a street, the record supports the finding that they have not. Photographs show that the

---

**3.** A block plat of the pertinent properties is set out as Appendix A.

**4.** When the complaint was filed, Murdock was the record owner of Fleet Parcel No. 3. Murdock later conveyed that parcel to Louda.

Fleet parcels bear no resemblance to a street. Schaefer & Strohminger has paved portions of Fleet Parcel Nos. 2 and 3. All of Fleet Parcel 1 and most of Fleet Parcel No. 2, however, are indistinguishable from the surrounding lots. The terrain is covered with grass and includes some trees and shrubs. A telephone pole sits in the middle of Fleet Parcel No. 2.

As shown in Appendix A, the Orfanos properties border in part Bonsal and Cornwall Streets, while appellees' properties lie between Cornwall and Folcroft Streets. Orfanos stores its materials and equipment on Lot 73A, Fleet Parcel No. 1 and the western half of Lot 76/119. A fence Orfanos erected and maintains encloses these parcels. This fence denies others access to Bonsal Street over Fleet Parcel No. 1. At trial, Orfanos stated that it used Bonsal Street on a regular basis to enter and exit its properties.

Orfanos filed a Verified Complaint for Declaratory Judgment and Injunctive Relief against Louis B. Schaefer and the other appellees on December 2, 1988. The complaint contained eight counts. Counts I, II and III sought a declaration that Orfanos possessed a private right of ingress, egress and regress over Fleet Parcel No. 3. Counts IV and VI sought to enjoin the named defendants from storing or leaving any object on Fleet Parcel No. 3 that would impede vehicular or pedestrian traffic. Count V sought a declaration that Orfanos had legal and equitable title to Fleet Parcel No. 2. Count VII was a trespass count relating to the storage of allegedly hazardous materials on Fleet Parcel No. 2, and Count VIII was a nuisance count relating to the storage of the same materials.

Appellees filed separate answers to the complaint. Appellees also opposed Orfanos's application for an interlocutory injunction. Finally, Schaefer & Strohminger filed a counterclaim against Orfanos, alleging title to a portion of Fleet Parcel No. 2 by adverse possession.

An evidentiary hearing on the interlocutory injunction application took place in January, 1989. The hearing judge

ordered Schaefer & Strohminger to remove the steel drums and containers that contained the alleged hazardous materials from Fleet Parcel No. 2. The judge denied all other relief requested in the application.[5]

Trial on the merits took place on November 20 and 21, 1989. Prior to the presentation of any evidence, Orfanos dismissed Counts VII and VIII as moot. After the proceedings, the court declared that Orfanos did not possess a private right of ingress, egress and regress over Fleet Parcel No. 3. The court also concluded that Schaefer & Strohminger had acquired, by adverse possession, legal and equitable title to a portion of Fleet Parcel No. 2. In its order, the court denied all other relief that Orfanos sought in its complaint. Orfanos filed this appeal on December 20, 1989.

## ADVERSE POSSESSION

Orfanos argues that the trial court erred in ruling that Schaefer & Strohminger acquired title to a portion of Fleet Parcel No. 2 by adverse possession. To establish adverse possession, the claimant must show possession was actual, hostile, open, notorious, exclusive, under claim of title or ownership, and continuous or uninterrupted for the statutory period of 20 years. Md.Cts. & Jud.Proc.Code Ann. § 5–103(a) (1974, 1984 Repl.Vol., 1989 Cum.Supp.); *Costello v. Staubitz,* 300 Md. 60, 67, 475 A.2d 1185 (1984); *Blickenstaff v. Bromley,* 243 Md. 164, 170, 220 A.2d 558 (1966).

The trial court ruled that Schaefer & Strohminger acquired title by adverse possession to that portion of Fleet Parcel No. 2 directly behind Lot 75. The trial court also ruled that Orfanos was the owner of the rest of Fleet Parcel No. 2. The evidence fully supports the trial court's findings as to each requirement of adverse possession. Accordingly, we will affirm. *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 354, 517 A.2d 1122 (1986).

---

5. No party has appealed the judge's interlocutory order.

—Actual Possession—

■ In determining whether a party has been in "actual" possession of the property, the court must consider the character and location of the land and the uses and purposes for which the land is naturally adapted. *See Blickenstaff,* 243 Md. at 171, 220 A.2d 558. Fleet Parcel No. 2 lies in an area zoned for business use in Baltimore City. Schaefer & Strohminger has, since 1965, consistently used Fleet Parcel No. 2 for business.[6]

Schaefer & Strohminger opened its auto dealership at Eastern and Dundalk Avenues in 1965. The dealership buildings and various storage lots were erected on and operated in Lot 121. Lot 75 was leased to Schaefer & Strohminger for use as a body shop for the dealership, but the lease did not include the paper street known as Fleet Street.

The body shop has always opened onto Fleet Parcel No. 2. From 1965 until the present, Schaefer & Strohminger used the portion of Fleet Parcel No. 2 behind Lot 75 as an extension of its body shop. It drove vehicles over Fleet Parcel No. 2 into the body shop on a daily basis; stored vehicles on Fleet Parcel No. 2; cleaned and maintained Fleet Parcel No. 2 as though that parcel were its own; blacktopped a portion of Fleet Parcel No. 2 at its own expense; and maintained a dumpster on Fleet Parcel No. 2. Schaefer & Strohminger's use of Fleet Parcel No. 2 is consistent with the purposes for which the land is naturally adapted. Accordingly, Schaefer & Strohminger's use of Fleet Parcel No. 2 has been "actual" since 1965.

---

6. In its brief, Orfanos states that "[t]he character and location of Fleet Street are consistent with its designation as a private street. All parties in this case have used Fleet Street as a street." This statement has no support in the record. No one has used all of Fleet Parcel Nos. 1, 2 and 3 as a street. Orfanos has fenced off Fleet Parcel No. 1 and stores equipment on that parcel. The portion of Fleet Parcel No. 2 Orfanos uses bears no resemblance to a street. The portion of Fleet Parcel No. 2 Schaefer & Strohminger uses has been used for body shop work for over 20 years. Fleet Parcel No. 3 was, until recently, impassable.

### —Open and Notorious—

Acts that make possession "actual" are ordinarily sufficient to make it visible and notorious. *Bishop v. Stackus,* 206 Md. 493, 498, 112 A.2d 472 (1955). The various uses of Fleet Parcel No. 2 by Schaefer & Strohminger were open and notorious.

### —Exclusive—

Exclusive possession means that the claimant must possess the land as his own and not for another. *Blickenstaff,* 243 Md. at 173, 220 A.2d 558. Schaefer & Strohminger's possession of Fleet Parcel No. 2 has been exclusive as against the rights of the community at large since 1965. *See Zimmerman v. Summers,* 24 Md.App. 100, 106, 330 A.2d 722 (1975). Schaefer & Strohminger has possessed Fleet Parcel No. 2 in a manner that would characterize an owner's use. *See Blickenstaff,* 243 Md. at 173, 220 A.2d 558. Moreover, there was *no* evidence that the possession of Fleet Parcel No. 2 behind Schaefer & Strohminger's was shared with anyone else.[7]

### —Hostile—

In *Hungerford v. Hungerford,* 234 Md. 338, 340, 199 A.2d 209 (1964), the Court of Appeals said:

> "The 'hostility' essential to acquisition of title by adverse possession does not necessarily impart enmity or ill will, but rather that the claimant's possession be unaccompanied by any recognition, express or inferable from the circumstances, of the real owner's right to the land."

The facts disclose no evidence that Schaefer & Strohminger's possession of Fleet Parcel No. 2 was other than hostile. Its use of Fleet Parcel No. 2 was and is inconsistent with an acknowledgement of any ownership rights in another.

---

7. Orfanos contends in its brief that "Schaefer & Strohminger shared the right to use that portion of Fleet Parcel No. 2 with all other property owners whose land abutted Fleet Street." The evidence was that only Schaefer & Strohminger used it as an owner would.

—Continuous—

The evidence demonstrates that Schaefer & Strohminger had utilized Fleet Parcel No. 2 in an uninterrupted manner since the opening of the body shop in 1965. The trial court found all of this sufficient:

"I'm satisfied that that is clearly the state of the law. I'm also *satisfied that the testimony and the evidence in this case is uncontradicted as to the manner in which this portion that I speak of, that portion only that abuts Lot 75 of the defendants, was used in the manner that the defendants claim it was used. It's un-rebutted* [sic] *testimony. And I think that every criteria that is called for and that must be met by the claimant has been met—twenty years and then some, continuous, uninterrupted, actual use, open use, exclusive use, hostile use. I think all of these criteria have been clearly met.*

"Counsel for the plaintiff argues: Well, a trailer was here just for this period of time, or drums were there just for that period of time, that the drums weren't there for twenty years, the trailer wasn't there for twenty years, some of the cars were just driving through; all of that may be true, but *I think the clear import of the testimony is that in a number of different ways this lot was being used for a period of over twenty years, uninterruptedly, for the business of a body shop.* Even the parking of cars of employees, even the parking of cars of customers is using the lot for the body shop, no fence is required. The giving of estimates—I know in the complaint, the counter claim complaint, it's alleged that body work was actually done on this lot. The evidence doesn't support that claim. But the fact that *estimates were given there is part of the work of a body shop. It isn't necessary that a particular facet of the operation continue for twenty years. What is important is that the use be continued for twenty years.*" (Emphasis added.)

Orfanos argues that the trial court erred in holding that Schaefer & Strohminger had shown actual possession of *all*

of that portion of Fleet Parcel No. 2 behind Lot 75. The trial court expressly found this in the instant case: "... I think the clear import of the testimony is that in a number of different ways this lot was being used for a period of over twenty years, uninterruptedly, for the business of a body shop."

The trial court in this case made specific findings as to the location and duration of each act of ownership on the disputed property at the close of trial. In light of our review, we cannot say the trial court was clearly erroneous in finding that Schaefer & Strohminger had acquired title to all the portion of Fleet Parcel No. 2 adjacent to Lot 75 by adverse possession. We noted in *Peters v. Staubitz*, 64 Md.App. 639, 647, 498 A.2d 661 (1985):

"While there is no precise formula for determining what constitutes actual occupation, it would be virtually impossible to require that a claimant use every square inch of the disputed property for every moment of the statutory period to establish adverse possession."

## FAILURE TO RULE

Orfanos argues on appeal that the trial court erred in not ruling on its claim that it had an implied easement over the portion of Fleet Parcel No. 2 that Schaefer & Strohminger acquired by adverse possession. We assume Orfanos is referring to the judge's oral opinion at the close of trial. An oral opinion, however, is not a final judgment and is not subject to an appeal where a written opinion is directed to be submitted. Rule 2–601; *Kearns v. Kearns*, 78 Md.App. 461, 465, 553 A.2d 1291 (1989). On December 4, 1989, judgment was entered with the written order. In the order, after the specific rulings, the trial judge ordered that *all* other relief sought was denied. This included the implied easement Orfanos sought.

In any event, Orfanos presented uncontroverted evidence that it was the *record* owner of Fleet Parcel Nos. 1 and 2. The record owner cannot also hold an easement over

his or her own land. Thus, at no time did it, or could it, claim any easement rights over those parcels. *See Hall v. Baltimore,* 56 Md. 187, 195 (1881). Once the court declared that Schaefer & Strohminger had acquired that portion of Fleet Parcel No. 2 by adverse possession, Orfanos lost all rights it had to the portion. We perceive no error.

## IMPLIED EASEMENT

### —Orfanos's Cases—

Orfanos contends the trial court erred in denying it an implied easement over the Fleet parcels in both directions, namely, to both Bonsal and Folcroft Streets. Orfanos seeks to support its contentions by the holdings in four early appellate court decisions: *White v. Flannigain,* 1 Md. 525 (1852); *Moale v. Mayor of Baltimore,* 5 Md. 314 (1854); *Hawley v. Baltimore,* 33 Md. 270 (1870); and *Mayor of Baltimore v. Frick,* 82 Md. 77, 33 A. 435 (1895). We find this reliance misplaced.

In *White,* 1 Md. at 540, the Court of Appeals stated the general rule with respect to the creation of such easements:

"We hold, that where a party sells property lying within the limits of a city, and in the conveyance, bounds such property by streets designated *as such,* in the conveyance, or on a map made by the city, or by the owner of the property, such sale implies, necessarily, a covenant that the purchaser shall have the use of such streets." (Emphasis in original.)

Some of the owners in *White* encroached on an established 45–foot street and other owners sought removal of the encroachments. The property in *White* was "divided, laid off, and sold to the present owners as bounding on and calling for the streets delineated on the plot." *White,* 1 Md. at 540. The Court went on to hold that

"when a sale, therefore, is made in conformity with such plan, it seems to be but plain justice to insist that the vendor, and all claiming under him, should be held bound

by the lines and designations by which the property has been sold."

*White,* 1 Md. at 540.

The circumstances surrounding the *White* deed were completely different from those surrounding the deed in the instant case. In *White,* the grantees relied on the representation that the street on which it was bounded would be 45 feet wide. Here, the grantees relied on no such representation as the deed negated any such reliance.

The trilogy of cases set forth, *Moale, Hawley* and *Frick,* did not involve situations similar to the instant case. Those cases dealt with the extent of dedication of a road bed as public, and none of the parties in the instant case argue these parcels are a public roadway. Even if we read them to support Orfanos's position, they lend but a suggestion of support. Orfanos relies on these cases principally to support the contention that the right of way goes *in both directions* from Bonsal to Folcroft.

In *Hawley,* the land of four property owners abutted a street designated as Mosher between Madison and McCulloh. The Court of Appeals held their easement ran in both directions until Mosher reached some public way. *Hawley,* 33 Md. at 280. The Court, however, went on to state:

"The doctrine of implied covenants will not be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold, and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a *right of way* over it, if it is of the lands of his vendor, *to its full extent and dimensions only until it reaches some other street or public way.* To this extent will the vendor be held by the implied covenant of his deed and no further."

*Hawley*, 33 Md. at 280 (emphasis added). Any question as to this language is resolved by *Layman v. Gnegy*, 26 Md.App. 114, 117, 337 A.2d 126 (1975), where we found:

> "Maryland has long followed the majority rule that where a street or other way is called for as a boundary and the grantor owns the fee in the street, the grantee gets a right of way by implication *to the nearest public road.*" (Emphasis added.)

If an implied easement exists, the easement would terminate at Cornwall, "the nearest public street." Normally, this statement would end our consideration of the issues in this case because only a portion of Orfanos's property borders on Fleet Parcel No. 2 and Orfanos has access to Bonsal, a public street, from his own property without an easement across Fleet Parcel No. 2. Orfanos argues, however, that, since part of his property abuts Fleet Parcel No. 2 between Cornwall and Folcroft, by the logic of *Hawley*, its easement should run over Fleet Street from Cornwall to Folcroft. Therefore, we will determine if any basis exists for an implied easement in this case.

### —The Theory of Implied Easements—

■ In order to determine whether an implied easement arose in the instant case, we must first look at how an implied easement normally arises.

> "Frequently, although there is no grant of an easement in express terms, an easement is regarded as arising in connection with a conveyance of land[. If it is] for the benefit of the land conveyed as against land retained by the grantor, [it is referred] to as a case of the 'implied grant' of an easement. . . .

> "This doctrine of implied grant and implied reservation finds its practical application in connection with the question whether, upon a severance of ownership of land, an easement is created corresponding to a pre-existing 'quasi easement,' and also in connection with the question of the existence of an 'easement of necessity.' "

H. Tiffany, *The Law of Real Property* § 779, at 253 (3d ed. 1939) (footnote omitted).

When an easement arises in favor of a grantee, whether it corresponds to a preexisting quasi easement or it is an easement of necessity, the existence of the easement is based on the theory that the grantor and grantee intend the easement to exist. The courts simply declare that the circumstances of a particular transaction create a presumption of this intention. Evidence is admissible to show that the surrounding circumstances raise a presumption that the property conveyed included an easement. The rules regarding the creation of easements of necessity and easements corresponding to preexisting quasi easements are rules of construction for determining the scope of the conveyance. Additionally, the grant of the easement is implied in the sense that it is not expressly mentioned in the conveyance. This is analogous to the situation where an express easement previously granted passes with the conveyance of the land without any express mention in the conveyance. From a legal point of view, it is immaterial whether the easement was passed by an express grant in the conveyance or whether the circumstances call for a construction of the conveyance to create a grant. H. Tiffany, *supra*, § 780 at 253–54.

> "One cannot have an easement over one's own land, but one may make use of one part of his [or her] land for the benefit of another part, just as, if they were separately owned...."

H. Tiffany, *supra*, § 781, at 255.

If that occurs, the owner of land treats the part of his or her land used for the benefit of another part as the subject of an easement. In effect, the part of the land used for the benefit of another part becomes what Tiffany calls a "quasi servient tenement." In this situation, if the owner transfers the dominant tenement without reference to this use, a quasi easement is ordinarily regarded as vesting in the grantee provided the quasi easement is of an "apparent, continuous and necessary character." H. Tiffany, *supra*,

§ 781, at 255. The courts have often failed to recognize that the question is one of construction and have set out absolute rules which have overlooked the basic common law. H. Tiffany, *supra,* § 781 at 256.

Since we are dealing with a rule of construction and the intent of the grantor and grantees, we need to look at the deeds upon which Orfanos relies.

### —The June 9, 1942 Deed—

The earliest deed dealing with this property which appears in the record runs from Canton Company of Baltimore as grantor to the Frank Novak Realty Company as grantee. The deed bears the date June 9, 1942 and conveys what is today known as Lots 73A, 121, 121A, 76/119 and 120. Certainly, the grantor in this deed did not intend to grant an easement as the words specifically negated any such intent:

> "All references made in the foregoing description or elsewhere in this deed to any street or highway are only for purposes of description and *are not intended and shall* [8] *be held or taken to dedicate such streets or highways* or any of them and the Grantor hereby express-ly reserves to itself all the right title and interest in and to all the said streets and highways respectively." (Emphasis added.)

Novak transferred the property to other persons unknown to this Court. Part of the property eventually came into the possession of Orfanos and part came into the possession of Schaefer & Strohminger. The deeds to Schaefer & Strohminger are not in evidence.

---

8. The word "not" was clearly omitted. The deed specifically states that a dedication was not intended. Morcover, the grantor reserved to itself all right, title and interest in the streets and highways. A reservation of interest and a dedication to public use are inconsistent. Therefore, it becomes clear that no dedication of the streets or highways described was accomplished or intended by this deed.

—The May 17, 1979 Deed—

The May 17, 1979 deed from Cornwall Associates, a Maryland Limited Partnership, to Orfanos conveyed Lot 73A and Lot 76/119. Cornwall Associates secured the property from Cornwall Associates, Inc. Cornwall did not own any part of the Fleet parcels and was in the line of the 1942 deed which negated any easement for the roadway.

—The January 31, 1986 Deed—

The January 31, 1986 deed ran from Canton Company of Baltimore to Orfanos and conveyed only Fleet Parcel No. 1. This deed stated that "all reference to Fleet Street is for the purpose of description only and is not intended to effect a dedication thereof to public use." At this time, Canton owned all three parcels that made up the paper street. Canton's ownership of both the remaining Fleet Parcel Nos. 2 and 3 continued until April of 1986 when it transferred these parcels to David H. Murdock Investment Co. Canton neither reserved nor granted an easement over the parcel. If any of the Fleet parcels were intended as a street, logic dictates that any grant or reservation of an easement over the remaining contiguous parts of the paper street would have been expressly made in this deed, as the only property being transferred was a part of that paper street. *See cf. Hansel v. Collins,* 180 Md. 209, 215–16, 23 A.2d 686 (1942).

—The June 2, 1988 Deed—

The June 2, 1988 deed ran from David H. Murdock /d/b/a Murdock Investment Co. to Orfanos and conveyed Fleet Parcel No. 2. As discussed above, Murdock was the grant-ee of Fleet Parcel Nos. 2 and 3 from Canton Company in April of 1986. As in the January 31, 1986 deed, the only property conveyed in the deed conveying Fleet Parcel No. 2 was a portion of the paper street. Hence, if an easement on the remaining portions of that street, Fleet Parcel Nos. 1 and 3, was intended, logic again dictates that it would be specifically granted or reserved. *See cf. Hansel,* 180 Md. at 215–16, 23 A.2d 686.

Looking beyond the words of the deeds to the circumstances surrounding the grants, the trial judge found the paper street was not used as a street. No inference, therefore, that the grantee expected the right of access to the paper street at the time the deed was executed can be drawn. The deed from which Orfanos could expect use of the street must be the 1979 deed, which conveyed Lots 73A and 76/119, and which was in the line of the 1942 deed that expressly negated the implication of an easement. We hold that no easement was intended by the deeds. Therefore, no implied easement over the Fleet parcels arose and the judgment of the trial court must be affirmed.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.

## APPENDIX A